## Frank Gale v. The People.

*Criminal law: Assault with intent to kill, etc.: Charge to the jury.* On a trial for an assault with intent to kill and murder, by discharging a revolver loaded with powder and ball, it is not error to refuse to charge as requested, where, as in this case, the charge as given is unobjectionable and the evidence does not call for the particular instruction asked, that " the jury must find from the evidence all the material allegations in the information, such as the intent to kill, and the means used sufficient to accomplish it, and that the pistol contained a leaden bullet, as charged; these are material averments, and must be proved in order to warrant a conviction."

*Criminal trial: Prisoner's statement: Cross-examination.* Upon cross-examination of a prisoner on trial for a crime, upon his statement to the jury, it is

error to allow questions to be put that relate to matters outside of that state-ment, such as whether he had lived or been in a number of places named, and whether at one he had not been arrested on a charge of murder, and at others, also, been arrested, and at others still been put in jail.—*People v. Thomas*, 9 *Mich.*, 321.

*Error not cured: Instruction to the jury.* The error committed in allowing such questions, is not cured by an instruction to the prisoner that he might decline to answer at his option; and especially not, where the asking of the questions is accompanied with the production, in view of the jury, of several letters, in a manner calculated to convey an impression that they contain damaging dis-closures which the prisoner must either admit or falsify the facts.

*Heard October 29. Decided November 7.*

Error to Kalamazoo Circuit.

·*O. T. Tuthill*, for plaintiff in error.

*Dwight May, Attorney General*, for the People.

·COOLEY, J.

The plaintiff in error stands convicted of an assault with intent to kill and murder one McDonald. The attempt is charged to have been made with a revolver loaded with powder and ball. The evidence showed the revolver to have been discharged, but McDonald was not injured, and there was no direct evidence that the revolver was loaded with ball. The circuit judge was requested to instruct the jury that, " The jury must find from the evidence all the material allegations in the information, such as the intent to kill, and the means used sufficient to accomplish it, and that the pistol contained a leaden bullet, as charged; these are material averments, and must be proved in order to warrant a conviction." This request was refused, and error is assigned upon the refusal.

The point made is, that, for all that appears, the revolver may not have been loaded at all, and, consequently, whatever may have been the supposition of the prisoner in that regard, and whatever his intent, the crime charged is not

shown to have been committed, inasmuch as the power to kill would then be wanting. And the cases of *Henry v. The State, 18 Ohio, 32*, and *State v. Swails, 8 Ind., 524*, are cited in support of this position.

The point is one which we do not think it necessary to discuss on this record. All the evidence in the case bearing upon it, tended to prove that the pistol was loaded as charged, and an instruction to the jury which treated that fact as disputed, could only, if it influenced their deliberations at all, have sent them off into the regions of conjecture, without practical benefit. No one but the prisoner himself knew how the weapon was loaded. He made a detailed statement of the affair, in which, though he does expressly say the instrument contained a bullet, he all the while assumes that it did, and, immediately after the firing, he went off and complained of himself on the evident supposition that he had inflicted dangerous, if not fatal, injury. We therefore think the case did not call for the particular instruction requested. The crime was correctly described in the charge, and its elements indicated so far as the case made necessary.

A more serious question arises upon the cross-examination of the defendant. His statement covered the whole case, and he was cross-examined upon it, without objection. Tho prosecution, then, after inquiring about the former place of residence of respondent, produced several letters in view of the jury, and from what they purported to contain, interrogated the respondent, whether he had lived or been in a number of places named, and whether at one he had not been arrested on a charge of murder, and at others also been arrested, and at others still been put in jail. All of these questions were objected to, but sustained by the court, and were answered. The court, however, informed the prisoner, after the first had been put and answered, that it was

his privilege to answer any question, or to decline to answer, just as he saw fit.

If these questions were improper, it must be apparent that the error. was not cured by the instruction to the prisoner that he might decline to answer at his option. When the judge sustained the exceptions, he decided in effect that they were proper to be put and answered; and had the prisoner declined to answer any of them, he would have been put in the position before the jury, of coming upon the stand in his own exculpation, and then refusing to make his disclosure as full as the rules of law required. An unfavorable influence upon the minds of the jury must inevitably have been produced, which in this case would .have been increased by the exhibition of letters, brought out before the jury for no purpose that we can conceive, unless to convey an impression that they contained .damaging disclosures regarding the. prisoner, which he must either admit or falsify the facts. If, therefore, the questions were improper in themselves, the error was a serious one.

And we have no doubt of their impropriety. The statute provides that the defendant in a criminal case "shall be at liberty to make a statement to the court or jury, and may be cross-examined upon any such statement."—*Sess. L., 1861, p. 169.* In *People v. Thomas, 9 Mich., 321,* it was said by Mr. Justice Campbell that "a cross-examination on such a statement would not be allowed to go beyond it. It could not properly extend over the entire issue, as it might if he were a general witness, neither could it go into any of the collateral inquiries whereby a witness' credit or memory is sometimes tested. And while his constitutional right of declining to answer questions, cannot be removed, yet a refusal by a party to answer any fair question not going outside of what he has offered to explain, would have its proper· weight with the jury." This view we regard as a

correct exposition of the statute, and perhaps the failure to act upon it in this case, may have arisen from the circumstance, that it appears in the reports as the view of a single judge only, though in fact it had then, and has now, the approval of the court.

We have frequently had occasion to remark upon the beneficent purpose which the statute of 1861 had in view, and to observe that practically it had tended to the furtherance of justice; but it can only have this effect when administered in the spirit which led to its adoption. Few men, however innocent, could safely go upon the stand to answer a criminal charge, if they must at their peril, be prepared to give satisfactory answers to questions regarding their whole former life, or if they declined to do so, have their triers informed that the information they declined to give, it was proper for the prosecution to call out, and that the refusal to respond to the questions justly subjected them to unfavorable inferences.

Such would be the practical result of a refusal to answer an interrogatory which the court had sustained after objection made. And a review of the evidence in this case suggests very forcibly, that however full may be the explanations, a list of questions which assume the existence of damaging facts, may be put in such a manner, and with such persistency and show of proof, as to impress a jury that there must be something wrong even though the prisoner fully denies it, and there is no other evidence.

Holding that these questions were erroneous, and that they might, and probably did prejudice the prisoner, the conviction must be set aside, and a new trial ordered.

The other Justices concurred.