[No. 21027.   Department Two.—December 22, 1893.]

THE PEOPLE, RESPONDENT, v. JAMES E. WELLS, APPELLANT.

CRIMINAL LAW—TRIAL—MISCONDUCT OF PROSECUTING ATTORNEY—IMPROPER QUESTIONS TO PREJUDICE JURY—Where the prosecuting attorney in a criminal action asks a defendant questions which he knows to be wholly inadmissible and wrong, without the expectation of answers, the clear purpose of which is to prejudice the jury against the defendant in a vital matter by the mere asking of the question, a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have influenced the verdict.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Clara Foltz,* for Appellant.

*Attorney-General W. H. H. Hart,* for Respondent.

McFARLAND, J.—Information charges the defendant Wells, jointly with Ollie Hutchings, alias Grace Gilbert, with the crime of forgery. Wells was tried separately, was convicted, and appeals from the judgment and from an order denying a new trial.

Appellant contends for a new trial upon several grounds: Because the assistant district attorney, representing the people, in his opening address to the jury made misstatements of facts prejudicial to appellant; because the court, while excluding all other witnesses not under examination, refused to so exclude a policeman who was a witness for and an active participant in the prosecution; because the court refused to strike out certain answers of the witness Leavitt; because one or two of the jurors were guilty of misconduct; because there is newly discovered evidence material to appellant; and because appellant was prevented from having a fair and impartial trial by reason of the misconduct of the prosecuting attorney in asking a certain question of the witness Lees and certain questions of the appellant when on the stand as a witness on his own behalf. The last ground of contention is the only one which we deem it necessary to largely discuss.

It appeared from the evidence that Ollie Hutchings falsely personated Miss Emma L. Dick, the owner of certain real property in San Francisco; forged the name of Miss Dick to a note and mortgage on said property; acknowledged the mortgage, as Miss Dick, before a notary; procured a loan of eight thousand dollars on the mortgage, and in a day or two afterwards disappeared.

The appellant Wells was a general business agent, dealing in real and personal property, etc., and the said loan to Ollie Hutchings was effected, in part, by his agency. The prosecution charged that appellant was an accomplice of said Ollie in said false personation and forgery, while appellant claimed that, like the notary and others, he was deceived by her and believed her to be Miss Dick.

It appeared that after the forgery had been discovered appellant made considerable effort to discover the said Ollie, and for that purpose employed one Leavitt and one Staniels, who traveled through a number of the counties and cities of the state to find her. Staniels was put on the stand as a witness for the prosecution. Afterwards, while the captain of the police was being examined as a witness for the people, the prosecuting attorney asked him this question: "I want to ask one leading question, and do not answer it until counsel has an opportunity to object. Is it a fact that a short time after that Staniels came to you and reported about Wells wanting him to tell the woman to skip?" Objection was made by appellant, and, of course, sustained. There was not the slightest excuse for asking this question. In fact, there was injected into it an apology for asking it. What, then, was its purpose? Clearly, to take an unfair advantage of appellant by intimating to the jury something that was either not true, or not capable of being proven in the manner attempted. And the wrong was not remedied because the court sustained an objection to the question. Counsel undoubtedly knew beforehand that the objection would be sustained.

The inexcusable asking of the foregoing question would not be, perhaps, of itself sufficient ground for reversing the judgment; but it is of importance when taken in connection with questions asked the defendant when a witness, as showing the general manner and temper with which the prosecution was conducted. Upon cross-examination of appellant the prosecuting attorney asked him these questions: "Where did you formerly reside?

Do you know the Highland National Bank of Newbough, New York ? Were you married to your present wife when you came here with her? Did not you admit in a letter to Mr. M. C. Belknap that in November, 1893, you forged your father-in-law's name to a note in New York?" To these questions counsel for appellant objected as incompetent, immaterial, irrelevant, and not in cross-examination; declared that they were unfair to appellant, and asked the court to instruct the district attorney not to ask any more such questions. The record merely shows that after discussion the objections were sustained. The first three of these questions are important mainly as leading up to the last one, the asking of which was utterly inexcusable and reprehensible. It would be an impeachment of the legal learning of the counsel for the people to intimate that he did not know the question to be improper and wholly unjustifiable. Its only purpose, therefore, was to get before the jury a statement, in the guise of a question, that would prejudice them against appellant. If counsel had no reason to believe the truth of the matter insinuated by the question, then the artifice was most flagrant; but if he had any reason to believe in its truth, still he knew that it was a matter which the jury had no right to consider. The prosecuting attorney may well be assumed to be a man of fair standing before the jury; and they may well have thought that he would not have asked the question unless he could have proved what it intimated if he had been allowed to do so. He said plainly to the jury what Hamlet did not want his friends to say: "As, 'well we know'; or, 'We could, an if we would'; or, 'if we list to speak'; or, 'There be, an if there might.'" This was an entirely unfair way to try the case; and the mischief was not averted because the court properly sustained the objection—though we think it should have warned counsel against the course which he was taking—and instructed the jury specially on the subject. The wrong and the harm was in the asking of the question. Of course, in trials of criminal cases questions as to the

admissibility of evidence will frequently arise about
which lawyers and judges may fairly differ in opinion;
and in such cases defendants must be satisfied when
courts sustain their objections.   But where the prose-
cuting attorney asks a defendant questions which he
knows, and every judge and lawyer knows, to be wholly
inadmissible and wrong, and where the questions are
asked without the expectation of answers; and where the
clear purpose is to prejudice the jury against the defend-
ant in a vital matter by the *mere asking* of the questions,
then a judgment against the defendant will be reversed,
although objections to the questions were sustained,
unless it appears that the questions could not have
influenced the verdict.

These views have been substantially announced sev-
eral times by this court and by courts of sister states.
In *People* v. *Devine,* 95 Cal. 231, the court, through Sharp-
stein, J., say: "We agree with appellant's counsel that
'the statements, questions, and remarks of the district
attorney were peculiarly calculated to prejudice the sub-
stantial rights of the defendant.'   We think what was
said by this court in *People* v. *Lee Chuck,* 78 Cal. 327,
and *People* v. *Bowers,* 79 Cal. 415, peculiarly applicable
to the conduct of the district attorney in this case, and
we hope the court may not again have occasion to ani-
madvert upon similar conduct of a prosecuting officer,"
and in a concurring opinion by De Haven, J., the views
heretofore stated are fully expressed, and a number of
authorities cited to the point.   In *People* v. *Ah Len,* 92
Cal. 282, 27 Am. St. Rep. 103, the judgment was re-
versed for conduct of the prosecuting attorney not more
censurable than that in the case at bar; and in that case
the trial court warned the jury specially upon the sub-
ject.   In *People* v. *Bowers,* 79 Cal. 415, the court say:
"Still more objectionable was the conduct of the prose-
cuting attorney.   It is true the court properly interfered,
rebuking the attorney and instructing the jury to pay
no attention to the statements.   But the statements were
well calculated to influence the jury in a case of this

character, and it is impossible for us to say that no injury resulted to the defendant therefrom." In *People* v. *Lee Chuck*, 78 Cal. 329, the court say: "Equally with the court, the district attorney, as the representative of law and justice, should be fair and impartial. He should remember that it is not his sole duty to convict, and that to use his official position to obtain a verdict by illegitimate and unfair means is to bring his office and the courts into distrust." In *People* v. *Mullings*, 83 Cal. 138, 17 Am. St. Rep. 223, the judgment was reversed because certain improper questions were asked the defendant when a witness, and it was contended that no injury was done because they were answered in the negative, but the court said: "It is quite evident that the *questions*, and not the answers, were what the prosecution thought important. The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based. To say that such a course would not be prejudicial to defendant is to ignore human experience and the dictates of common sense." In the foregoing cases the facts were not precisely like those in the case before us; but the principle applied there is equally applicable here. The main difference is that in those cases the statement of the obnoxious matter was in a different form from that employed in the case at bar. The following are some of the cases on the point from other states: *Gale* v. *People*, 26 Mich. 161; *People* v. *Cahoon*, 88 Mich. 456, *Leahy* v. *State*, 31 Neb. 566, *Tucker* v. *Henniker*, 41 N. H. 317; *The State* v. *Trott*, 36 Mo. App. 29. In the last case the supreme court of Missouri says: "The state's attorney must have known that the answer called for by the question was inadmissible, and, if he knew it, the putting of such a question to the accused was so unfair and improper that it may be doubted whether it could be deemed to have been cured by the prompt action which the court took."

The only question then is whether or not we can see from the record that the conduct of the prosecuting attorney did not prejudice the appellant; and we' certainly cannot see that it did not. The main evidence in the case was the testimony against appellant of Ollie Hutchings, acknowledged to be not only an accomplice but the principal in the alleged crime, and the testimony of appellant in his own behalf. Therefore the credibility of appellant was a most important matter in the case, and whatever tended to impair that credibility was, material in the highest degree; and that the conduct of the prosecuting attorney so tended is entirely clear.

It is too much the habit of prosecuting officers to assume beforehand that a defendant is guilty, and then expect to have the established rules of evidence twisted, and all the features of a fair trial distorted, in order to secure a conviction. If a defendant cannot be fairly convicted, he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent.

There are no other points likely to arise on another trial; although it may be proper to say that appellant's motion to strike out certain answers of the witness Leavitt should have been granted after it had appeared that the declaration of appellant which he swore to was not made to him, but to his partner.

Judgment and order reversed, and a new trial ordered.

DE HAVEN, J., and FITZGERALD, J., concurred.