[No. 21104.   In Bank.—February 7, 1895.]

THE PEOPLE, RESPONDENT, *v.* UN DONG, APPELLANT.

CRIMINAL LAW—APPEAL—REVIEW OF EVIDENCE.—A verdict of conviction upon conflicting evidence will not be disturbed for insufficiency of the evidence to support it, even though a portion of the evidence is calculated to cast discredit on the case of the prosecution.

ID.—ASSAULT WITH DEADLY WEAPON—MOTIVE OF ASSAULT—CROSS-EXAMINATION OF PROSECUTING WITNESS—PREJUDICIAL ERROR.—Upon the trial of a defendant charged with an assault with a deadly weapon, where the prosecuting witness in his direct examination testified that the only cause of the assault upon him, so far as he knew, was that he was present on a previous occasion when the defendant and several others assaulted another person, and that he witnessed the affair, and subsequently gave the names of those engaged in it to the officers, which resulted in their arrest, it is prejudicial error to refuse to allow cross-examination as to what the defendant did at the time of the previous assault.

106   83
124  657
125  135
125  138

ID. — IMPROPER CROSS-EXAMINATION OF DEFENDANT — PREJUDICIAL QUES-
TIONS. — It is improper to cross-examine the defendant about any mat-
ters not testified to in his examination in chief; and to ask him ques-
tions as to his mode of life not testified to by him in chief, the obvious
purpose and effect of which is to degrade and injure him in the estima-
tion of the jury, is prejudicial error, and such error is not cured or the
prejudicial effect removed by negative answers to the questions allowed,
but the error lies in permitting such an examination to be made.

ID.—IMPROPER IMPEACHMENT OF WITNESS.—It is not proper to ask a wit-
ness for the prosecution on cross-examination whether he is connected
with a gambling-house, when such evidence has no relevancy to any
thing called out on his direct examination, and is asked solely for the
purpose of discrediting the witness with the jury.

ID.—CONFLICTING EVIDENCE—INSTRUCTION AS TO CONFLICT.—While it is a
dangerous practice for the court, in its charge to the jury, to under-
take to characterize the effect of the evidence, yet where there is in
fact an irreconcilable conflict in the evidence as between the prosecu-
tion and defense, a charge stating that such conflict exists is not preju-
dicially erroneous.

APPEAL from a judgment of the Superior Court of
Santa Clara County and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*C. D. Wright,* and *D. W. Burchard,* for Appellant.

*Attorney General William H. H. Hart, Deputy Attorney
General Charles H. Jackson, V. A. Scheller,* and *W. P.
Veuve,* for Respondent.

VAN FLEET, J.—Defendant (a Chinese) was convicted
of an assault with a deadly weapon upon a fellow-coun-
tryman, and sentenced to the state prison for the term of
two years. He appeals from the judgment and an order
denying him a new trial.

1. It is strongly urged that the evidence is insuffi-
cient to sustain the verdict, but we do not think this
contention can be sustained. The evidence of the pros-
ecution tended to show that the alleged assault was
committed between 11 and 12 o'clock at night, upon a
public street, in a quarter of the city of San Jose known
as "Chinatown." That defendant and an associate, one
Ah Wei, lay in wait at a street corner, outside a restau-

rant, until the prosecuting witness, one Ah Bong, came out, when defendant pointed out Ah Bong to Ah Wei and told the latter to shoot; that Ah Wei immediately fired two shots at Ah Bong, one of which hit the latter in the back. That immediately following the shots by Ah Wei several other shots were fired by a party or parties from across the street, but by whom the latter shots were fired or whom they were fired at was not disclosed. These facts in substance were testified to by a number of Chinese witnesses, several of whom positively identified defendant as one of the assailants. On the part of defendant a large number of Chinese witnesses, and some white witnesses, gave testimony tending strongly to show that defendant was not present at the time of the assault, and did not participate therein. One Wheeler, a peace officer, or watchman, in Chinatown, testified that he was in a restaurant near the place of the shooting, and ran out on the sidewalk where he could see the parties before the second shot was fired. That he saw Ah Bong's assailants and recognized them, and that defendant was not one of them, but that one Toi Soon did the shooting. Another white witness, Jones, who was the doorkeeper at the Chinese theater, testified that he had seen defendant enter the theater earlier in the evening, and that defendant was still in the theater when the shooting occurred. Other witnesses, including some police officers, testified that the prosecuting witness immediately after the shooting accused another party than defendant of doing the shooting. There was also evidence tending to show that the trouble grew out of differences between members of rival tongs or societies; that the arrest and prosecution of defendant, who it appeared was the grand master or headman of one of the rival tongs, was an afterthought prompted by a desire on the part of the wounded man and his friends to make defendant suffer vicariously for the wrong of the real assailant, who had escaped and could not be apprehended.

The evidence is exceedingly contradictory and con-

flicting throughout, and there are many things calcu-
lated to cast discredit upon the case of the prosecution.
But, while the evidence is not, to our minds, by any
means satisfactory, we cannot say that it was not suffi-
cient to sustain the verdict.

2. But we think the court committed error in its
ruling on the cross-examination of the prosecuting wit-
ness, Ah Bong, which, under the circumstances, was
manifestly prejudicial to defendant.

The only evidence tending to show motive for the al-
leged assault was that given by the witness, Ah Bong,
the party assaulted. He testified in his direct exami-
nation by the prosecution that the only cause of the
assault upon him, so far as he knew, was that he was
present on a previous occasion when the defendant with
several other Chinese came to the theater and assaulted
the white doorkeeper by beating him with revolvers;
that he (Ah Bong) witnessed the affair, and subse-
quently gave the names of those engaged in it to the
officers, which resulted in the arrest of the assailants.
That previous to this he and the defendant were on
friendly terms and had never had any difficulty. Upon
cross-examination the witness was asked, " Was this de-
fendant, Un Dong, among the parties who assaulted
that doorkeeper "? to which he answered, " Yes, sir; he
had something to do with it, too." The defendant's
counsel then asked, " What did he do"? to which ques-
tion the district attorney objected, the objection was
sustained, and defendant was not permitted to cross-
examine the witness upon the subject. The record does
not disclose the ground of the objection, but the question
was plainly in the line of proper cross-examination, and
upon a point of vital importance to the defendant. The
witness having assigned the result of the affair at the
theater as the sole ground for the defendant's malice
toward himself, and the only motive for the subsequent
assault upon him, it was very material for the defend-
ant to rebut the statements of the witness in this regard,
and to show if he could, by the cross-examination of the

witness, that the latter was mistaken, and that defendant had in truth no participation in that affair, as defendant himself claimed was the fact. This he might have been able to accomplish if permitted to properly cross-examine the witness, or at least have so shaken the statements of the latter as to have turned the scales of justice in his favor.

3. The defendant was examined as a witness in his own behalf. His examination in chief was confined to a denial of any participation in the assault upon the prosecuting witness, Ah Bong, or that he was present on the occasion, and a statement that he was in the theater at the time; and a further denial of having taken part in the assault upon the doorkeeper of the theater.

In cross-examination he was asked these questions by the prosecution:

" Q. Who lives in that house with you where you live?

" *Defendant's Attorney.* We object to that as irrelevant and immaterial. Objection overruled; defendant excepts.

" A. I had servants that attend to my household matters.

" Q. Some women live in that house?

" Objected to and sustained.

" *Prosecuting Attorney.* I think the prosecution has a right to show what this man is engaged in, or his occupation or business.

"*The Court.* Why don't you?

" *Prosecuting Attorney.* Q. Is n't it a fact that you live in a house of prostitution "?

To this defendant objected, but the objection was overruled and defendant answered: " No; it ain't a house of prostitution; it is a house where they rent rooms for boarding purposes."

He was also asked, "Are there any Chinese prostitutes in that house "? and, " Are there any Chinese women in that house " ? to which latter questions objections were

sustained. This whole course of examination by the prosecution was improper in the highest degree. The questions asked were not only in large part violative of the defendant's right to have his cross-examination confined to the subject matter of his testimony in chief (*People* v. *O'Brien*, 66 Cal. 603; *People* v. *Hamblin*, 68 Cal. 101), but the obvious purpose and undoubted effect of such course of examination was to degrade and injure defendant in the estimation of the jury. Its allowance was therefore erroneous and clearly prejudicial. (*People* v. *Wells*, 100 Cal. 459.)

Nor was the error cured or the prejudicial effect removed by the negative answers to the questions allowed, or the sustaining of defendant's objection to others where, as here, the manifest purpose and inevitable tendency of the questions was to injuriously affect the verdict. The error in such case lies in permitting an examination of that character. (*People* v. *Wells, supra.*)

4. It was likewise error to allow the question, "Aren't you connected with a gambling-house with Yen Yick"? put by the prosecution on cross-examination to Chee Ying, a witness for defendant. It was not in response to any thing called out on his direct-examination, and could have been intended but for one purpose—that of discrediting the witness with the jury by a method wholly unsanctioned in law.

This character of examination appears to have been several times indulged in by the prosecution. We have had frequent occasion to animadvert upon similar conduct in criminal cases, and it has been uniformly held to be improper. Its repetition is not only wholly inexcusable, but it is not in keeping with a proper appreciation by the prosecuting officer of the functions of his office.

5. It is contended that the court invaded the province of the jury in charging them that there was an "irreconcilable conflict" in the evidence as between the prosecution and defense. While it is a dangerous practice to undertake to characterize the effect of the evidence,

in the sense in which the language of the court was here used, we are not prepared to say, in view of the evidence in the case, that the charge was prejudicially erroneous.

For the errors above pointed out the judgment and order are reversed.

GAROUTTE, J., McFARLAND, J., and BEATTY, C. J., concurred.