[Crim. No. 157.   Second Appellate District.—July 1, 1910.]

## THE PEOPLE, Respondent, v. CHARLES C. GRIDER, Appellant.

CRIMINAL LAW—ORDER DENYING NEW TRIAL—APPEAL IN OPEN COURT FROM JUDGMENT AND ORDER—AMENDMENT AS TO METHOD—REVIEW ALLOWED.—An appeal in open court from an order denying a new trial still exists under section 1237 of the Penal Code, and although, since the amendments of 1909 to sections 1239, 1240 and 1241 of that code, no special method is provided for taking such appeal, yet upon an appeal in open court from the judgment and order, the order after judgment presented in the record may be reviewed, under the terms of section 1259 of the Penal Code.

ID.—GRAND LARCENY—OBTAINING DIAMOND RING WITH INTENT TO STEAL—SUPPORT OF VERDICT.—Under an information for grand larceny committed by defendant in stealing a diamond ring worth $550, where the evidence shows that the ring was obtained from the prosecutrix by defendant, as her agent, under a fraudulent assertion that it was necessary to obtain an exchange of plaintiff's lot for other lots, whose owner had proposed a different method of exchange, to defendant's knowledge, and neither proposed to exchange it for the ring nor knew of the obtaining of the same, it

is held that from such facts, the jury may reasonably infer that at the time of obtaining the possession of the ring defendant feloniously intended to convert the same to his own use, and that the evidence is sufficient to support the verdict of guilty, as charged.

ID.—THEORY OF CASE—OBTAINING POSSESSION BY FRAUD OR ARTIFICE—TITLE NOT PARTED WITH—INSTRUCTIONS.—The theory of the case for the prosecution was properly supported by instructions that the case for the people was limited to the taking of the ring by fraud, trick or device of defendant, and that "when by means of fraud or artifice, or any other kind of contrivance, the possession of personal property is fraudulently obtained from another, and the party so obtaining the possession acquires it with the intention of stealing the property when he gets possession of it, then the crime is larceny, provided the person from whom the property is taken still remains the *owner* of the property, and has not parted with the title," and that in order to convict the defendant, the jury must believe that the prosecutrix "did not at the time intend to part with her ownership in said ring, but was induced by fraud of the defendant to part with the possession," there being at the time "a felonious intention on defendant's part, in taking said ring, to steal said ring."

ID.—EVIDENCE CONSISTENT WITH INSTRUCTIONS—STATEMENTS OF COMPLAINING WITNESS—*Held*, that the statements disclosed by the evidence, as made by the complaining witness, were consistent with the crime of larceny, as defined by the instructions; and that these statements, with other evidence, justified the jury in concluding that defendant obtained the ring fraudulently from the complaining witness, knowing that she had no intention of parting with the title to him. They might have found from her statements that he obtained possession of the ring against her will, and retained its possession by fraud; and they certainly might find from the evidence that it was his intention from the beginning to obtain it by force or fraud, and to appropriate it to his own use.

ID.—NATURE OF LARCENY OF RING DISTINGUISHED.—The nature of the larceny of the ring, as distinguished from the crime of false pretenses or embezzlement, is that its owner had no intention to part with her property therein to the person taking it with intent to steal it, although he may intend to part with the possession thereof.

ID.—NATURE OF CRIME OF FALSE PRETENSES.—In the crime of false pretenses the owner does intend to part with his property in the money or chattel to the person to whom he delivers possession, but is induced to do so by the fraud or false pretenses of such person or someone on his behalf.

ID.—DISTINCTION BETWEEN "LARCENY" AND "EMBEZZLEMENT."—As between a "larceny" of the character here involved and an "embezzlement," the chief distinction is the presence of the false and

felonious intent with which the possession of the property is procured by the accused in the case of the larceny and the absence of this in embezzlement.

Id.—Statements not Showing "False Pretenses" or "Embezzlement by Agent."—The statements made by the appellant, which are held consistent with the crime of larceny, do not show that she parted with the title by reason of false pretenses, nor that defendant came lawfully, as distinguished from fraudulently, into the possession of the property as the agent of the complaining witness.

Id.—Variance not Shown—Code Provision not Relied upon.—Measured by proper distinctions, it is held that there was no variance between the proof and the charge of grand larceny in the information; and the use of the words, "fraud, trick or device," did not indicate that section 332 of the Penal Code was relied upon to secure a conviction.

Id.—Proper Refusal of Request—Honest Belief of Right to Ring.—The court properly refused to give a requested instruction as to the honest belief of the defendant that he was entitled to the ring, where the instructions given by the court in this matter were all that the defendant could ask.

Id.—Misconduct of District Attorney Prejudicial—Ground for Reversal.—*Held,* that the misconduct of the district attorney in the asking of improper questions, and maintaining a general atmosphere of adverse comment, remark and running argument throughout the trial, showed that his presumed purpose was to prejudice the jury against the defendant, and constituted ground of reversal of the judgment and for a new trial.

Id.—Asking Improper Questions—Test of Misconduct.—When an improper question is asked by the district attorney, the test whether it was misconduct is, What was his purpose in asking the question? If it was to take an unfair advantage of the defendant by intimating to the jury something that either is not true or not capable of being proven in the manner attempted, then it is error. If he knows when he asks the question that an objection to it should or will be sustained, the error is not corrected, because the objection is sustained.

Id.—Asking Questions of Defendant Known to be Wrong.—Where the prosecuting attorney asks questions of the defendant which he knows to be wholly wrong or without expectation of answers, or to be withdrawn if objected to, and the clear purpose is to prejudice the jury against the defendant in a vital matter by the *mere asking* of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have prejudiced the jury.

Id.—Remarks of Trial Judge not Misconduct.—*Held,* that none of the remarks of the trial judge constitutes misconduct on his part,

13 Cal. App.—45

,and that his rebukes to counsel were proper under the circumstances appearing.

ID.—VITAL ELEMENT TO BE CONSIDERED IN CONNECTION WITH MISCON-DUCT—QUESTION OF INJURY—PRESUMPTION—BURDEN OF PROOF.—The vital element to be considered in connection with all irregularities or misconduct of court, counsel, party, or jury, is whether the substantial rights of the complaining party are materially affected thereby. This being shown, it will be presumed that he was injured, unless the contrary affirmatively appears. The burden is on the moving party to show the irregularity or misconduct, which might have prevented a fair trial; when this is done, the burden shifts to the successful party to show, as matter of fact, that the irregularity or misconduct did not affect the result.

ID.—NEWLY DISCOVERED EVIDENCE—DISCRETION OF COURT.—*Held,* that the showing of newly discovered evidence is not such as to warrant this court in saying that the trial court abused its discretion in not granting a new trial on this ground, whether it be considered as evidence affecting the issues tried, or as impeaching evidence tending to weaken the testimony of the complaining witness.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. George R. Davis, Judge.

The facts are stated in the opinion of the court.

Milton K. Young, W. Ona Morton, Earl Rogers, and W. H Dehm, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

.TAGGART, J.—Information for grand larceny, verdict of guilty and sentence of imprisonment in state's prison for two years. Appeal in open court from judgment and from order of court denying defendant's motion for a new trial.

The attorney general objects to the consideration of the appeal from the order denying defendant's motion for a new trial on the ground that, although such an appeal still exists under section 1237 of the Penal Code, by reason of the amendment of sections 1239, 1240 and 1241 in 1909, no method for taking such an appeal is now provided by law; that, prior to the amendments referred to, a method of appeal from the judgment or *any* order was provided by section 1239, whereas,

now the appeal in open court is limited to the judgment and orders made *after* judgment, and therefore does not include orders relating to a motion for a new trial. While the view of the attorney general would be correct, if this matter were considered only in connection with the sections mentioned, under section 1259 of the Penal Code, all matters in the record may be reviewed by this court if properly presented. This objection is urged as affecting only the error assigned by the misconduct of the district attorney.

The larceny of appellant was predicated upon the taking from the complaining witness of a diamond ring of the value of $550. Owing to the pressing demands of the holders of some liens thereon, the complaining witness called upon the defendant, who was a real estate dealer, to negotiate a sale or exchange a lot in Venice belonging to her. According to her testimony, defendant advised her that one McCarthy would exchange two lots in Redondo for her Venice lot and a sealskin coat which she owned. To this she assented, but later defendant told her that McCarthy would trade if she put up the ring instead of the coat, but would not otherwise. She at first refused to part with the ring, but defendant insisted, and reminded her of her possible loss of the Venice lot if she did not make the trade. As she testified: ''I took it [the ring] off my finger [and had it in my hand and], he took it out of my hand while we were discussing the matter.'' Not being able to get the ring back, she consented to its use, if necessary, to carry out the trade with McCarthy, but for no other purpose. Defendant never returned the ring to her, and McCarthy testified that he accepted the proposition to trade for the sealskin coat, but that in his negotiations with the defendant no mention was made of any ring; that he never demanded one and never received one. As these negotiations were all had prior to the time of the taking of the ring by the defendant, an intent upon his part to convert the ring to his own use at the time of procuring it from the complainant might reasonably be inferred from these facts.

In presenting the first point made by appellant, to wit, that the evidence is insufficient to justify the verdict, it is contended that certain statements which the complainant testified to having made to others, about the transaction, are inconsistent with the facts necessary to constitute a larceny. For

instance: ''The worst of the whole thing is that I had to give up my ring''; and ''I said it would only be with that provision that if it was necessary to use the ring in the Redondo lots, but if it was not necessary, that the ring should be returned to me, and in no way was the ring to be used in any other way. I didn't want to use it then.'' The theory upon which the case was tried is indicated in the instructions given by the trial court. The jury were instructed that the case for the people was limited to a taking by fraud, trick, or device, and that ''the law is, that when by means of fraud, or artifice, or any other kind of contrivance, the possession of personal property is fraudulently obtained from another, and the party so obtaining the possession acquires it with the intention feloniously of stealing the property when he gets possession of it, then the crime is larceny; provided, the person from whom the property was taken still remains the owner of the property, and has not parted with the title. One of the questions, therefore, for the jury to consider in this case is, whether there was a parting with the title by the witness A. D. Van Houten.'' It also instructed them that in order to convict the defendant the jury must believe, ''that she did not at the time intend to part with her ownership in said ring, but was induced by fraud of the defendant to part with the possession,'' there being at the time a ''felonious intention on defendant's part, in taking the ring, to steal the said ring.''

The distinction between ''false pretense'' and ''embezzlement'' on the one hand and larceny on the other, is clearly recognized by these instructions, and the statements quoted from the complaining witness' testimony are entirely consistent with the crime of larceny. These statements do not, as appellant contends, show that she parted with the title by reason of false pretenses, nor that defendant came lawfully, as distinguished from fraudulently, into the possession of the property as the agent of Mrs. Van Houten. These statements, together with the other evidence in the case, justified the jury in drawing the inference that the defendant obtained the ring with the felonious intent to convert it to his own use, by means of his misrepresentations as to the McCarthy trade, knowing that the complainant had no intention of parting with the title to him when she gave him the possession

of it. Indeed, under the evidence, they might well have found that he obtained possession of it against her will, and retained it (the possession) by fraud, and that she did not *give* it to him at all. They were justified in finding from the evidence that it was his intention from the beginning to obtain it by force or fraud and appropriate it to his own use.

In a larceny of the kind under consideration the owner of the thing has no intention to part with his property therein to the person taking it, although he may intend to part with the possession. In false pretenses the owner does intend to part with his property in the money or chattel to the person to whom he delivers the possession, but is induced to do so by the fraud or false pretenses of such person or someone on his behalf. (*People* v. *Delbos,* 146 Cal. 734, 736, [81 Pac. 131].) As between a larceny of this character and an embezzlement, the chief distinction lies in the presence of the fraudulent and felonious intent with which the possession of personal property is procured by the accused, in the case of the larceny, and the absence of this in embezzlement. Measured by these distinctions, the evidence here does not disclose a variance, as appellant contends, but sustains the charge in the information. It seems hardly necessary, in the light of what is said above, to distinguish the charge here and the evidence in its support from the acts punishable under section 332 of the Penal Code. The use of the terms "fraud, trick, or device" by the trial court in its instructions does not imply that this section was invoked to secure a conviction. The instruction in which these words appear is one in which the crime of larceny is being defined by the court, and if the element of "felonious" intent be necessary, it is sufficiently supplied elsewhere to prevent prejudice. The instruction is not one which directs a conviction. This is true of the other instructions of similar purport to which exception is taken.

The refusal of the trial court to instruct the jury as requested by the defendant with reference to his honest belief that he was entitled to the ring was not error. The instruction given by the court on this matter was all that defendant could ask.

It is also contended that defendant was deprived of a fair trial by the misconduct of the district attorney during the trial of the cause. Among the instances of misconduct as-

signed as error are the following: An expert witness testifying to the value of the diamond in question on behalf of the prosecution exhibited a diamond belonging to himself, which he characterized as an exact match for the one in question in the case, and the defendant asked that this diamond be made an exhibit in the case. To this the district attorney objected, as he stated, "in view of the fact that the defendant himself has the ring alleged to have been stolen in this case, and in the absence of any showing . . . that he cannot produce it, . . . when there is no showing that the real thing, the stolen diamond, the ring alleged to have been stolen, could not be produced in court." After objection made, the court directed the first sentence reread by the reporter, and ordered it stricken out, and instructed the jury to disregard it. Nothing was said or done as to the rest of the statement, although the entire language was objected to. On the cross-examination of the defendant, in seeking to elicit evidence tending to show that the complaining witness was under great financial stress of which defendant had taken advantage, the district attorney asked the question: "Didn't she give that reason in her conversation that she would turn that property over because of the judgment?" The witness replied: "I think Mrs. Van Houten said that she would not transfer that lot, or make a deal on account of the judgment, because she didn't have the money to pay for it, if I remember correctly." Whereupon, the district attorney made the following comment: "Yes, I think that was right; she didn't have the money and she was under this burden; she had to get out from under it as fast as she could, and she went to you to help her out." This was followed by the question: "I think that was the way, wasn't it?" No answer to this question was sought and none was given. On another occasion, in cross-examining the defendant as to a conversation had with the complainant, the district attorney asked this question: "Didn't she say in that conversation that she had talked with her attorney, and he had said for her to have absolutely nothing to do with you unless you could be bound up in black and white?" Upon an objection being made to this question, the district attorney withdrew it, but added to his statement making the withdrawal: "The defendant knows all about it." To this remark the defendant's counsel ex-

cepted and objected on the ground that this was an improper method of getting before the jury a matter which was not evidence.

Were these the only matters, perhaps it might be said that they are not sufficient to justify the setting aside of a verdict of guilty and a reversal of the judgment, but these are only instances showing the general atmosphere of adverse comment, remark, and running argument of the case by the district attorney throughout the trial. In a number of instances, under the guise of stating the purpose for which evidence was sought to be introduced, the conclusions and deductions of the district attorney and comments upon the evidence already in were made. These arguments were objected to, and in some instances the court instructed the jury in relation thereto; at other times these remarks were unrebuked and no instructions given, and in one instance, while the evidence was being received, when the attorney for defendant objected to the district attorney making a speech before the jury, the trial court, instead of suggesting that the remarks be confined strictly to what was proper, said: "No. I want to hear this. But you can take your exception."

The language of the district attorney preceding this objection was: "I will have to state my purpose is to show by this witness—it runs to the intent of the defendant, and his good faith in dealing with the prosecuting witness in this case relative to this ring. In other words, had he been seeking every opportunity possible to place this prosecuting witness—" (Here interrupted by the objection and remark of the court.) After an argument in similar vein to that apparent in the last sentence, covering a page of the transcript, the district attorney was again interrupted by defendant's counsel, whereupon the court said: "In order that there may be no prejudice, the jury are instructed that what the attorney says is not evidence." In another instance the district attorney, in stating his purpose for introducing certain acts and statements of defendant, said they would "indicate that his intention, possibly from the very earliest acquaintance with this woman, after, as she has testified, he continually admired the ring, and continuously schemed and devised and practiced artifice and fraud, with a view to obtaining possession of that

ring—what for? In order to steal it.'' There are numerous other instances of similar character.

Where an improper question is asked of a witness by a district attorney, the test whether it is misconduct is found in answer to the question: ''What was the purpose of counsel in asking the question?'' If it was to take an unfair advantage of the defendant by intimating to the jury something that was either not true or not capable of being proven in the manner attempted, then it is error. And if the district attorney knows when he asks the question that an objection to the question should or will be sustained, the error is not corrected because the objection is sustained. Where the prosecuting attorney asks a defendant questions which he knows to be wholly wrong, and where the questions are asked without expectation of answers, or where they are asked and withdrawn upon objection, and the clear purpose is to prejudice the jury against the defendant in a vital matter by the *mere asking* of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have influenced the verdict. (*People* v. *Wells,* 100 Cal. 459, [34 Pac. 1078].)

When a district attorney desires to introduce evidence of guilty knowledge on the defendant's part, or evidence that is a part of a system, scheme, or conspiracy to commit the crime charged, or any other evidence properly admissible, and the purpose is not clearly apparent from the question propounded, he should state to the court upon what ground he bases his right to have the evidence admitted. If its relevancy to the purpose declared is not then made apparent to the court, he may state the relation of the facts sought to be elicited to those constituting the crime. In doing this he should have due and proper regard to the fact that his proffer is being made in the presence of the jury, that it is merely tentative, and may be denied by the court, and that what is said ought not to be so stated as to give any color to the case in the minds of the jurors. When the evidence is all admitted and the testimony closed, it is early enough for the jury to consider it, and the views of the district attorney as to its weight *must* be reserved until the proper time to argue the case arrives. For him to do otherwise would be to induce

the jurors to violate the oath taken by them at each adjournment of the court "not to form or express any opinion upon the case until it is finally submitted to them." The persistent argument of the facts of the case by the district attorney here whenever an objection was made by the defendant to a question propounded by the district attorney, or at least for quite a number of times, was certainly prejudicial. There can be no doubt that the iteration and reiteration of these conclusions and arguments were intended to support what the district attorney regarded as a weak point in his case. It was his apparent intention to influence the jury, and we cannot say that he did not.

The rule was properly stated by the trial court when it rebuked the attorney for defendant for commenting on the testimony of the complaining witness in the following language: "I don't want you to pass those sort of strictures upon the witness, because that may have a tendency to prejudice the jury against the witness, which, if such feeling is created, ought not to be done, at least before the final argument of the case." This and several other remarks of the trial judge are assigned as misconduct on the part of the court and as showing feeling upon the part of the judge adverse to the defendant. The trial judge's rebuke to counsel in the foregoing language was proper under the circumstances. The other remarks of the court which are assigned as misconduct do not indicate any feeling of prejudice toward defendant or his case. It is not necessary that we determine whether or not the trial court violated the rule recognized by the supreme court in *People* v. *Blackman,* 127 Cal. 248, [59 Pac. 573], and *People* v. *Tupper,* 122 Cal. 424, [68 Am. St. Rep. 44, 55 Pac. 125], by being absent from the courtroom temporarily during the time counsel was arguing the case to the jury, but we think it our duty to say, that while those cases are accepted as precedents by the appellate courts of the state, absences of trial judges from the courtroom while the trial is in progress, however brief, cannot be safely indulged in.

The showing of newly discovered evidence is not such as to warrant us in saying the trial court abused its discretion in not granting a new trial on this ground. This is true whether we consider it as evidence affecting the issues tried, or as impeaching evidence tending to weaken the testimony of the

complaining witness. The effect of the evidence, considered in either way, is a matter which the trial court is best qualified to pass upon, and its conclusion will not be disturbed in this instance.

Loath as appellate courts are to set aside verdicts or reverse judgments in criminal cases upon the ground that the defendant's rights have been prejudiced by the misconduct of district attorneys alone, this has been found necessary in at least two recent cases. (*People* v. *Mohr*, 157 Cal. 732, [109 Pac. 476] ; *People* v. *Derwae*, 155 Cal. 592, [102 Pac. 266].) In the latter case the court, in speaking of the effect of the rebuking of counsel by the court as a correction of the error, quotes from *People* v. *Valliere*, 127 Cal. 65, [59 Pac. 295], as follows: "Rebukes do not seem to have any effect upon prosecuting officers, and probably as little on juries. The only way to secure fair trials is to set verdicts so procured aside."

The vital element to be considered in connection with all irregularities or misconduct of court, counsel, party or jury, is, are the substantial rights of the complaining party materially affected thereby. This being shown, it will be presumed that he was injured, unless the contrary affirmatively appears. In other words, the burden is on the moving party to show the irregularity or misconduct which might have prevented a fair trial; when this is done, the burden shifts to the successful party to show as a matter of fact that the irregularity or misconduct did not affect the result. It is the reasoning of this rule which underlies the declaration of the court in *People* v. *Wells*, 100 Cal. 459, [34 Pac. 1078], that where the misconduct of a district attorney tends to prejudice the jury against the defendant, in a vital matter, the judgment will be reversed unless it appears that the asking of the improper questions complained of could not have influenced the verdict. We are unable to say that the misconduct did not influence the jury in this case.

Judgment and order reversed and new trial ordered.

Allen, P. J., and Shaw, J., concurred.