[Criminal No. 511.   Filed October 29, 1921.]

[201 Pac. 398.]

# LEWIS WALKER, Appellant, v. STATE, Respondent.

1. RAPE—EVIDENCE THAT PROSECUTING WITNESS WAS NOT WIFE OF ACCUSED NEED NOT BE DIRECT, BUT CIRCUMSTANCES HELD SUFFICIENT.—Evidence that the prosecuting witness was not the wife of the accused need not be direct, and circumstantial evidence *held* sufficient.

2. CRIMINAL LAW—EVIDENCE OF SIMILAR OFFENSES NOT ADMISSIBLE IN PROSECUTION FOR RAPE.—In a prosecution for forcible rape, evidence of other similar crimes against other persons than prosecutrix is inadmissible.

3. CRIMINAL LAW—MISCONDUCT OF COUNSEL FOR THE STATE IN TRIAL FOR RAPE HELD PREJUDICIAL.—Misconduct of the state's attorney in a prosecution for rape, in repeatedly propounding improper and incompetent questions to accused and two other witnesses, the purpose in asking the questions being to get before the jury statements in the guise of questions, though objections to evidence were sustained, *held* prejudicial.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   R. C. Stanford, Judge. Reversed and remanded.

Mr. Howard C. Speakman, Mr. Arthur L. Goodman, and Messrs. Dougherty & Dougherty, for Appellant.

Mr. W. J. Galbraith, Attorney General, and Mr. George R. Hill, Assistant Attorney General, for the State.

McALISTER, J.—The appellant herein, Lewis Walker, was convicted of the crime of rape, and given an indeterminate sentence of not less than twenty-five

---

2.   On evidence of other crimes in prosecution for rape, or assault to rape, see notes in 8 Ann. Cas. 459; 18 Ann. Cas. 442; Ann. Cas. 1915D, 164; 62 L. R. A. 193; 48 L. R. A. (N. S.) 236.

nor more than thirty years in the state prison. He appeals from this judgment and the order denying him a new trial.

There are three assignments of error. The first is the denial of appellant's motion for a new trial, based upon the ground that the state failed to prove that at the time of the alleged rape on October 26, 1920, the prosecuting witness was not the wife of the defendant. It is true that there is no direct evidence in the record on this material allegation; that is, no one testified in answer to a question or otherwise that the prosecuting witness and defendant were not then husband and wife. It appears very clearly, however, from the evidence that the defendant and the prosecuting witness, Ruthie May Brakebill, first met about 5 o'clock on the afternoon of October 26, 1920, in the Arizona Café, at Mesa, Arizona, where the defendant had gone for his dinner, and that she was introduced to him as Ruthie May Brakebill, and according to her own statement her name so remained until November the 18th, following, when she married one J. W. Fletcher. She testified that previous to her marriage, which was to Fletcher, her name was Brakebill, which shows conclusively that she could not have been the wife of defendant on October 26th.

This fact is also disclosed from an examination of the entire record. The prosecuting witness arrived in Mesa, a stranger, from her home in Blackwater, Pinal county, Arizona, only the day before she first saw the defendant. Her plan was to do housework, but, upon learning after reaching the town that the gentleman whose employ she intended to enter was a widower, declined that position, and secured one as a waitress in the Arizona Café, her service beginning the day following her arrival in Mesa. She and the defendant, who went to the restaurant about 5 P. M. on the first day of her work for his dinner, were in-

troduced by Ruby Davis, another waitress in the same café, and while he was having his meal, which she had served, they engaged in conversation. The defendant left after finishing his dinner, but returned to the restaurant that evening about 9, when he and the prosecuting witness again conversed for a short while. It was suggested by him at their first meeting, and agreed on either then or at the second, that they go for a ride that evening after the prosecuting witness finished her day's work at 11 P. M., and pursuant to this agreement the defendant appeared at the restaurant a few minutes before that time, the two leaving together immediately after 11, and going over to an automobile standing near the Salt River Valley Bank, where Ruby Davis and Roy Horton were waiting. These four entered the car, which was a taxi driven by a colored man by the name of John Chavie, and went by way of Tempe to what is known as the Hole-in-the-Rock, where it is alleged the criminal act was committed, returning to Mesa about 1 or 2 A. M., October 27th, only eight or nine hours having elapsed since the parties first met.

These were the only three occasions on which the prosecuting witness and the defendant were together. What they said and did at each meeting was testified to by several witnesses, and at no one of them was any reference made to their being married, and such an occurrence, especially on an acquaintance so brief, would undoubtedly have been mentioned in the testimony. The circumstances of each meeting were such as to negative it, for the first and second time they were together was at the restaurant while the prosecuting witness was on duty, and the third was at the same place just before 11 P. M. under the same conditions, though they left there just afterwards, going directly to the automobile, which they entered, and then to the Hole-in-the Rock, from which they re-

turned in two or three hours, making an effort all the while to avoid being recognized by anyone. These facts conclusively show that the prosecuting witness was not the wife of the defendant at the time of the alleged offense; in fact, the case was tried by both parties upon this theory. It is not necessary that such allegation be established by direct evidence; it is sufficient if the facts and circumstances are such that no other conclusion can be drawn. As said by the Supreme Court of Washington in *State* v. *May,* 59 Wash. 414, Ann. Cas. 1912B, 113, 109 Pac. 1026:

"The principal contention of the appellant is that the evidence is insufficient, because there is no proof in the record that the child was not the wife of one Gust Arndt, who actually committed the crime. It is true there is no direct and positive evidence that the child was not married to Arndt. It was apparently assumed by counsel throughout the trial of the case that the marriage relation did not exist, and no direct testimony was offered upon that question. But it was shown that the child was under the age of fourteen years, and that she was living at home with her father and mother, and bearing her maiden name. In fact, she was a mere schoolgirl, and there is nothing in the record to indicate that she was married. All the circumstances indicate beyond question that she was unmarried, and certainly was not the wife of Arndt. While it is the rule that want of the marriage relation is an essential ingredient of the crime, and must be alleged and proved, still it is not absolutely necessary to prove that fact by direct and positive testimony; but, like any other fact, it may be proved by facts and circumstances from which the conclusion may be drawn."

See, also, *State* v. *Reed,* 153 Mo. 451, 55 S. W. 74; *Lewis* v. *People,* 37 Mich. 518; *Brenton* v. *Territory,* 15 Okl. 6, 6 Ann. Cas. 769, 78 Pac. 83; *Munger* v. *State,* 57 Tex. Cr. R. 384, 122 S. W. 874; 22 R. C. L. 1221, par. 55.

The second assignment is the denial of appellant's motion for a new trial, based upon the misconduct of counsel for the state, the assistant county attorney, in propounding to the appellant and two of his witnesses on cross-examination certain questions which, it is urged, were entirely improper and incompetent, but asked solely for the purpose of prejudicing the jury against appellant. Mrs. Walker, mother of the defendant, was questioned as follows:

"Q. Mrs. Walker, I will ask you whether the defendant, your son in this case, was ever in any trouble similar to this.

"Mr. Speakman: Wait just a minute. I object to this, if your honor please.

"The Court: Sustain the objection.

"Mr. Noble: I will ask you, Mrs. Walker, whether or not a lady by the name of Mrs. Morgan and her daughter, from Prescott, Arizona, did not visit you here and tell you that Lewis was the father of an unborn baby."

The appellant himself was asked the following questions:

"Q. You have been arrested in Mesa for bootlegging—

"Mr. Speakman: Wait just a minute. We object to any further questioning on the reputation, as to general reputation or as to specific acts.

"Mr. Noble: I was not asking him about specific acts which would not be admissible, your honor.

"The Court: I will sustain the objection, Mr. Noble, as to the misdemeanor referred to.

"Mr. Noble: Have you ever been told by the town marshal in Mesa to leave town?"

Mrs. Ruby O'Neil, formerly Ruby Davis, a witness in behalf of appellant, was interrogated as follows:

"Q. Have you ever been convicted over here by city police?

"Mr. Speakman: Now, if your honor please, we object to that.

"The Court: The objection is sustained.

"Mr. Noble: Or by the Mesa police?

"The Court: The objection is sustained.

"Mr. Noble: Have the Mesa police ever warned you to get out of town?

"Mr. Speakman: I object to that.

"The Witness: Have not; have not.

"The Court: Those questions are improper, Mr. Noble; they are not allowed.

"Mr. Noble: I know it; but I want to ask them, your honor; I have a purpose."

An objection to each of these questions was interposed and sustained, but appellant urges that merely to ask questions so palpably improper and incompetent is so highly prejudicial that it constitutes reversible error, and with this contention the respondent, the state, by its brief filed in the cause, does not take issue, at least in so far as it refers to the question propounded to Mrs. Walker regarding Mrs. Morgan and her daughter from Prescott. The appellant was being prosecuted for the crime of rape committed against the person of Ruthie May Brakebill, and the perpetration of other crimes of a similar nature against other persons than she was wholly beside the issue, the crime charged—forcible rape—not being one in which the similar offense rule obtains. There could have been, therefore, no purpose in asking these questions other than to get before the jury certain statements in the guise of questions, that would be highly prejudicial to the appellant but which the assistant county attorney must have known were inadmissible for any purpose, even though he may have been convinced they were true.

The prosecuting attorney represents the people, is a *quasi*-judicial officer, and consequently looked upon as fair and impartial, and when questions like these are propounded by him, jurors are likely to think that the statements made therein are true, or

they would have gone unasked. Such a method is violative of the fundamental rights of the appellant, for every person charged with crime is entitled under the Constitution and laws of this state to a fair and impartial jury trial, "conducted according to the established principles of law, not the least important of which is that the verdict shall be found only upon relevant and competent facts produced before the jury under the rules prescribed for the admission of evidence." *People* v. *Ah Len*, 92 Cal. 282, 27 Am. St. Rep. 103, 28 Pac. 286. In a case in Nebraska defendant was being prosecuted for forcible rape, and the state's attorney asked him on cross-examination if he did not on the day following the alleged offense go to the home of Miss B., and, finding her alone, attempt to kiss her and drag her to a lounge, and stated before the jury that he would follow this up and prove it. The Supreme Court of that state in *Leahy* v. *State*, 31 Neb. 566, 48 N. W. 390, in disposing of an assignment of error based on the action of the county attorney in this respect, used the following language:

"It is the duty of a prosecuting officer to conduct the trial of a criminal case according to established rules. He acts in a semi-judicial capacity and is supposed to act alone from principle and without bias or prejudice. The state has guaranteed to everyone a fair trial, and such trial cannot be had if the prosecution can resort to tricks to secure a conviction. If such practice was sanctioned it would result in many cases in the conviction of innocent persons. The plaintiff in error was on trial for the crime charged in the information. So far as appears he had not been charged with any other offense, and certainly was not on trial for the second. The statements of the attorney were improper and in the highest degree prejudicial, and for those causes the judgment is reversed and the cause remanded for a new trial."

23 Ariz.—5

In this case, however, the prosecution seems to have proceeded upon the theory that questions as well as answers furnished information for the guidance of the jury in determining the guilt or innocence of the accused. In reply to the court's remark that certain questions propounded by him to one of appellant's witnesses were improper, the state's attorney admitted that he knew it, but said that he had a purpose in asking them. What could this have been except to influence the jury against appellant by discrediting in a highly improper manner one of his witnesses and her testimony? For all information brought before a jury is supposed to be for the purpose of aiding the cause of the side which introduces it. The statement, therefore, that he knew it was improper was an admission that an attempt to convict the accused on facts which could not properly have been admitted was being made.

"This was an entirely unfair way to try the case; and the mischief was not averted because the court properly sustained the objection—though we think it should have warned counsel against the course which he was taking—and instructed the jury specially on the subject. The wrong and harm was in the asking of the question. Of course, in trials of criminal cases questions as to the admissibility of evidence will frequently arise about which lawyers and judges may fairly differ in opinion; and in such cases defendants must be satisfied when courts sustain their objections. But where the prosecuting attorney asks a defendant questions which he knows, and every judge and lawyer knows, to be wholly inadmissible and wrong, and where the questions are asked without the expectation of answers, and where the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained unless it appears that the questions

could not have influenced the verdict." *People* v. *Wells,* 100 Cal. 459, 34 Pac. 1078.

See, also, 16 C. J. 892, note; *People* v. *Grider,* 13 Cal. App. 703, 110 Pac. 586; *State* v. *Gleim,* 17 Mont. 17, 52 Am. St. Rep. 655, 31 L. R. A. 294, 41 Pac. 998; *People* v. *Un Dong,* 106 Cal. 83, 39 Pac. 12; *People* v. *Mullings,* 83 Cal. 138, 17 Am. St. Rep. 223, 23 Pac. 229; *Gale* v. *People,* 26 Mich. 159; *State* v. *Irwin,* 9 Idaho, 35, 60 L. R. A. 716, 71 Pac. 608; *State* v. *Fournier,* 108 Minn. 402, 122 N. W. 329; *State* v. *Rose,* 178 Mo. 25, 76 S. W. 1003.

It cannot be fairly deduced, however, from the entire record that the prejudicial conduct of counsel for the state did not aid in bringing about the conviction. Hence the judgment is reversed and the case remanded for a new trial.

ROSS, C. J., and FLANIGAN, J., concur.