505 P.2d 553

**STATE of Arizona, Appellee,**

v.

**Charles Victor HILL, Appellant.**

**No. 2404.**

Supreme Court of Arizona,
In Banc.
Jan. 24, 1973.
Rehearing Denied Feb. 27, 1973.

**94**

Gary K. Nelson, Atty. Gen. by Louis A. Moore, Jr., Asst. Atty. Gen., Phoenix, for appellee.

Gibson & Gibson by Franklin K. Gibson, Phoenix, for appellant.

HAYS, Chief Justice.

Defendant, Charles Victor Hill, appeals from his conviction of the crime of robbery. He was sentenced to five to six years in the state prison, after a guilty verdict by a jury. He contends that error was committed when the trial court admitted "certain questions propounded by the prosecutor."

The robber grabbed the victim's purse and ran. The crime took place at 8:30 p. m. in a South Phoenix shopping center which was well lighted, both inside and outside the buildings. Positive identification was made by the victim and a bystander, both from a group of photographs and in court. The defense was alibi.

The first witness for the defense was James Hill, defendant's brother, who testified that defendant was at the Neal home in the presence of six other persons, continuously from 7:00 to 11:00 on the night of the robbery. Cross-examination naturally covered the activities of the witness during the whole day in an effort to see how good his memory was and whether any contradictions would develop. The responses of the witness were somewhat vague and not entirely satisfactory. Part of the dialogue between him and the prosecutor was as follows:

"Q . . . And what did you do between 1:00 and 1:30 til 2:00?

"A . . . I got up and went messing around playing basketball and stuff like that.

"Q You don't know where you were messing around here, just there and everywhere?

"A Yes.

"Q Where were you about 4:00 o'clock that afternoon?

"A Messing around.

"Q Do you know where?

"A No.

"Q Do you know with whom?

"A Well, a guy named James Jenkins, I know—I remember being around with him . . .

"Q Where were you about 5:00 o'clock?

"A I was messing around.

"Q Were you at home?

"A No.

"Q How about 5:30, where were you then?

"A Still out.

"Q But you weren't home?

"A No.

\*    \*    \*    \*    \*    \*

"Q Do you remember talking to me I believe up here—down at the county attorney's office just before the last time I had you testify, testify like this for the record, and do you remember telling me at that particular time that you were home all afternoon?

"MR. GIBSON: Just a moment, just a moment, your Honor. I'm going to object to this unless counsel will verify or testify himself.

"MR. ZETTLER: If Mr. Gibson wishes me to take the witness stand, I will be glad to do that.

"THE COURT: You may proceed.

"Q BY MR. ZETTLER: Do you recall telling me that you were home all afternoon?

"A I remember I didn't say all afternoon, you know, I didn't say all afternoon. I remember telling you I sat home for about a half hour and then I left, you know. I didn't say I was there for no all afternoon.

"Q Well I have it written down and I recall that you said you were home all afternoon."

In rebuttal, no attempt was made to prove that James Hill had told the prosecutor anything in conflict with the testimony. However, the prosecution called Officer Altfeltis, but after a few innocuous questions, court was recessed and some sort of proceedings were had off the record in chambers, near the end of which the judge announced:

"It is ordered denying the motion for a mistrial made on behalf of defendant during the testimony of James Hill . . ."

Defendant's first argument is that the court erred in permitting the prosecutor to impeach James Hill by questions designed to prove that he had made prior inconsistent statements to the prosecutor himself. Defendant refers to this as impeachment by insinuation and correctly points out that in State v. Singleton, 66 Ariz. 49, 182 P.2d 920, we held:

"But when, as here, such questioning is raised and then dropped with no further attempt on the part of the State to prove its point, . . . we believe it to be wholly improper and highly prejudicial. . . . If the questions were persistent enough and cleverly enough framed, no amount of denial on the part of a defendant would be able to erase the impression in the mind of the jury that the prosecutor actually had such facts at hand and that probably there was some truth to the insinuations. . . .

* * * * * *

"'* * * it is not within the province of a prosecutor, under the pretence of affecting the credibility of the witness, to propound interrogatories without any pretense or attempt to establish the truthfulness of the matters suggested by such inquiry and solely to cast insinuations upon the defendant. . . .'

* * * * * *

"[O]ur court has laid down the rule that no prosecuting officer, in order to impeach a witness, can engage in such questioning without being prepared and able to prove the insinuations. . . ." 66 Ariz. at 65, 182 P.2d at 930.

The reasons are clear. First,

"[A] person on trial charged with a particular crime should not be required to defend against every possible aspersion which may be made against him but which is in no way connected with the issue to be determined." Ibid. at 64, 182 P.2d at 929, 930.

Second, as we said as early as 1921, in Walker v. State, 23 Ariz. 59, 201 P. 398:

"The prosecuting attorney represents the people, is a *quasi* judicial officer, and consequently looked upon as fair and impartial, and when questions like these are propounded by him, jurors are likely to think that the statements made therein are true, or they would have gone unasked. Such a method is violative of the fundamental rights of the appellant, for every person charged with crime is entitled under the Constitution and laws of this state to a fair and impartial jury trial." 23 Ariz. at 64–65, 201 P. at 400.

■ This language is particularly applicable (1) where the witness being impeached is the defendant himself, after he has elected to take the stand, and (2) where the insinuating questions are of the type which seek to give the impression that

the witness has been convicted of a felony, rather than that he has made prior inconsistent statements. The application of the above-cited cases is not nearly so clear where the witness is not the defendant and the questions do not refer to previous bad acts. In such cases, the defendant does not have to be prepared to defend against any aspersions other than the crime for which he is being tried, and the aspersions are not other crimes, but merely other statements.

█ In the instant case, the witness was not the defendant, but was his brother, and the question was designed to test his memory and veracity by an inquiry as to a previous contradictory statement. If he had previously told the prosecutor that he had been home all afternoon, and on the stand testified as he did, that he was away from home for several hours, the prosecution was justified in asking the question and the jury could decide whether he was a liar, or had a bad memory.

The difficulty here is that the prosecutor lost his temper or did not know the law, and when the witness made a statement which contradicted one made to the prosecutor before the trial, the prosecutor said:

"Well I have it written down and I recall that you said you were home all afternoon."

█ This was a gross violation of ethics and highly prejudicial error. The jury, as we have previously noted, is likely to believe such a statement by a prosecutor who has, in effect, placed his own veracity in issue. The defendant has no effective way to cope with such impropriety. We therefore agree with the defendant that reversible error was committed.

As this case must be reversed, it is unnecessary to determine the other issues argued because they probably will not recur.

This case is reversed and remanded.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.