627 P.2d 702

**STATE of Arizona, Appellee,**

v.

**Oscar TOVAR, Appellant.**

**No. 1 CA–CR 3796.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 2, 1980.
Rehearing Denied Jan. 12, 1981.
Review Denied April 30, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Richard J. Hertzberg, Phoenix, for appellant.

## OPINION

EUBANK, Judge.

Following a jury trial, appellant was found guilty on two counts of an indictment charging him with the sale of obscene items in violation of A.R.S. § 13–532(A)(2) and (B), (now § 13–3502). The items consisted of a film entitled "SWEDISH EROTICA # 6 WET AND WILD" (Count II), and a magazine entitled "GET DOWN WITH 3" (Count III). He was acquitted of a further Count charging him with the exhibition of an obscene film. The trial judge suspended appellant's sentence and placed him on probation for three years on condition that he serve two months' confinement in the county jail. Appellant appeals from the judgment.

The facts are that appellant was employed as a clerk and projectionist at the Empress Theater in Phoenix for three years. The theater was owned and operated by his older brother Joseph. Joseph hired and fired all personnel and was responsible for ordering, receiving, and checking all materials displayed and sold at the theater.[1] As a clerk, appellant sold films and magazines displayed in a glass display case located in the lobby to customers, and rang up the sales on a cash register. As a projectionist, he operated the projector exhibiting films for viewers in the theater. Appellant's other duties included training new employees as clerks and projectionists. Appellant admitted that he had created and installed an obscene sign at the exit of the theater, that he enforced Joseph's policy against admission of persons under 18 years of age, and that although he assisted Joseph in hiring clerks and projectionists, he had nothing to do with their termination or the hiring of any of the theater's nude dancing girls. Appellant admitted that there were signs at the theater warning people of the explicit sexual nature of the materials available for their purchase and viewing.

On the evening of April 8, 1977, undercover Police Officer Graham purchased the magazine "GET DOWN WITH 3" for $10, and the film "SWEDISH EROTICA # 6 WET AND WILD" for $24.95 from appellant. He rang up Graham's purchase on the cash register. These items constitute the two Counts and convictions that appellant is appealing.

No issue is raised that the two items appellant sold to Officer Graham were not obscene. Rather, appellant argues that he was denied due process of law by virtue of the fact that the prosecutor insinuated that minors were exposed to the materials exhibited and sold by the Empress Theater. He further argues that the prosecutor improperly attempted to impeach witnesses by asking them about acts of misconduct not supported by a conviction. Additionally, he argues that he was denied his right to be indicted by a grand jury. Finally, he urges that the Arizona obscenity statute violates the first and fourteenth amendments to the United States Constitution. We will discuss the issues in the order in which they are raised.

The first issue, the prosecutor's insinuation that minors were exposed to materials sold at the theater, was discussed fully in our Memorandum Decision in *State v. Joseph Tovar,* 1 CA–CR 3807, filed August 19, 1980. There we eliminated all of appellant's present complaints except for one, ruling that the trial court properly granted Joseph a new trial based on the prosecutor's cross-examination of Joseph concerning his employment of Allen Hunsberger as a clerk. We said:

> The clear implication of this cross-examination is one of impeachment. Appellee and his brother had testified that no minors were ever employed at the theater and the questions indicate that State was preparing the ground to prove on rebuttal that Allen Hunsberger was a minor

1. *See* a related matter, *William Henry Brophy College v. Tovar,* 126 Ariz. 191, 619 P.2d 19 (1980).

when employed by the appellee as a clerk and projectionist. Such proof was never introduced by the State but the strong inference remaining before the jury was that appellant [Joseph] had actually hired a minor as a clerk and projectionist. We agree with appellee, this constituted improper cross-examination by insinuation and was prejudicial to him under the circumstances. *See State v. Hill*, 109 Ariz. 93, 94–5, 505 P.2d 553, 554–5 (1973); Udall, *Arizona Law of Evidence*, § 45, pp. 70–71.

Appellant and Joseph were jointly indicted, tried, and convicted. Joseph was granted a new trial, while appellant's motion for a new trial was denied. Therefore, we must first decide whether the prejudicial error attributed to Joseph's case was also prejudicial to appellant. A similar situation arises from a trial where two or more defendants are tried jointly and one is convicted but the others are either acquitted or convicted of lesser crimes. Such results are characterized as "inconsistent" verdicts. The rule in Arizona regarding such verdicts is well stated in *State v. Jordan*, 105 Ariz. 250, 462 P.2d 799 (1970):

It is argued that these two verdicts were inconsistent. The majority view in the country is that verdicts as between two defendants tried together need not show rational consistency. See Annot., 22 A.L.R.3d 717, 723 (1968). In the recent case of *State v. Zakhar*, 105 Ariz. 31, 459 P.2d 83 (1969), we held that consistency between verdicts on the several counts of an indictment is unnecessary. While *Zakhar, supra*, is not squarely on point, it does reject the proposition that reviewing courts may second-guess juries on the logic of their verdicts. Such a refusal to invade this province of the jury has been the basis for several decisions holding that verdicts as between two defendants, the situation in the case at bar, need not be consistent. In *Taylor v. State*, 159 Fla. 74, 31 So.2d 47 (1947), the court held that there was no inconsistency warranting reversal of a grand larceny conviction because the other jointly charged defendant was found guilty of

petit larceny. See also *Odom v. United States*, 377 F.2d 853, 22 A.L.R.3d 705 (5 Cir. 1967), and *United States v. Bergdoll*, 272 F. 498 (D.C. [3 Cir.] 1921).

105 Ariz. at 251, 462 P.2d at 800. Thus, where joint defendants are tried, consistency or inconsistency in their respective verdict is not the question. The question is whether there is substantial evidence in the record to sustain the jury verdict against the defendant appealing. A similar rule must be applied here. In *State v. Joseph Tovar, supra*, we held that the trial judge properly granted Joseph a new trial. The issue here, however, is whether the evidence substantially supports appellant's conviction, and whether the prejudice attributed to Joseph's trial has also prejudiced the trial of the appellant. *See People v. Hobson*, 77 Ill.App.3d 22, 32 Ill.Dec. 940, 396 N.E.2d 53 (1979); *People v. Taylor*, 25 Ill.App.3d 396, 323 N.E.2d 388 (1974).

A reading of the record demonstrates that although appellant and Joseph were tried jointly, they occupied entirely different status both as to the crimes charged and as to the proof of the crimes. Appellant, for example, was an employee. He worked for an hourly wage as a sales clerk and film projectionist; he knew of the explicit sexuality of the fare offered the patrons of the theater; he painted and posted an obscene sign and sold the obscene items charged in Count II and Count III to the undercover police officer. Joseph, on the other hand, was the owner, operator, employer and manager of the theater. It was his business. He made all the managerial decisions, purchased the obscene materials sold and viewed in the theater, and hired and fired all personnel, including the nude dancing girls and the appellant. He made all rules governing the operation of the theater, including the age of patrons to be admitted. The evidence is clear that appellant was merely an employee who sold obscene items to undercover police officers and projected obscene films for their viewing, while Joseph was the man in charge, the one that set the rules, paid the bills, and benefited from the profit, if any. There-

fore, the State's attempted impeachment of Joseph by the insinuation that he had personally hired a clerk-projectionist named Allen Hunsberger, a minor, went to Joseph's status as the owner and manager. On the other hand, the evidence against the appellant that he sold the items charged to an undercover police officer was overwhelming and uncontroverted. The trial judge was of the opinion that the prejudice resulting to Joseph did not extend to the appellant and we agree. Due to the clear distinction established by the evidence at trial between Joseph, the owner, and appellant, the employee, we hold that the trial judge did not err in denying appellant's new trial motion. In addition, the record contains substantial uncontradicted evidence that appellant sold the obscene items as charged.

Prior to trial appellant filed a motion *in limine*. It was not opposed by the State and was subsequently granted by the trial court. Appellant argues that numbers 4, 12, and 19 of the motion prohibit the mention of any other crime, such as the mention of minors.[2] The applicable paragraphs read:

4. Any other crimes of the defendant, past, present or future. This is improper. *State v. Hill*, 109 Ariz. 93, 95, 505 P.2d 553 (1973); *Burrows v. State*, 38 Ariz. 99, 117, 297 P[ac]. 1029 (1931).

12. That pornography gets worse and worse or that soon animals and children will be involved. This is improper, inflamatory (sic) and the defendant should only be required to answer for the materials it exhibited. *State v. Hill*, 109 Ariz. 93, 95, 505 P.2d 553 (1973) (A defendant should not be required to defend against every aspersion, only those things he is charged with).

19. Any mention of alleged crimes or acts of misconduct that took place in or near the defendants' business other than those charged in the indictment.

No proper objection was made by appellant during the trial to any alleged violations of these paragraphs. Appellant contends that under the authority of *State v. Briggs*, 112 Ariz. 379, 382, 542 P.2d 804, 806–7 (1975), he was not obligated to object where the motion *in limine* had been granted. *Briggs* is distinguishable from this case on the facts. In *Briggs*, appellant's motion was for the court to exclude from the evidence certain articles of clothing which were worn by the victim at the time of the murder because of the alleged prejudicial effect of the clothing on the jury. The trial court denied the motion. Our supreme court held that the denial of a *proper* motion *in limine* was enough to preserve the issue for appeal. A reading of paragraphs 4, 12, and 19 above readily distinguishes the motion in *Briggs* from the motion made here. These paragraphs constitute statements of law which may or may not be applicable to the trial and which are not the *proper* subject for the motion *in limine*. For example, specific evidence, murder clothing, was attempted to be excluded in *Briggs*. In *State v. Rodriguez*, 126 Ariz. 28, 612 P.2d 484 (1980), our supreme court said, "[I]n criminal cases, a motion *in limine* is nothing more than a motion to suppress specifically authorized by Rule 16, Arizona Rules of Criminal Procedure, 17 A.R.S." A reading of paragraphs 4, 12, and 19 above shows that they are not sufficient to support a motion to suppress under Rule 16, *id*. *Briggs* is not applicable to the motion *in limine* here, and consequently, specific objections to the evidence were required in order to alert the trial court to an evidentiary problem. Failure to object waives the error, if any.

We further note that the motion was untimely filed. At appellant's arraignment, the court set May 5, 1978 as the last day for motions. The motion *in limine* was filed on June 14, 1978, forty days late. The minute entries do not contain an order expressly extending the motion filing date, nor was permission to file the motion requested of

2. Examples of crimes could include A.R.S. §§ 13–3506, 3508, 3552, 3553, 3554.

the court. Under such circumstances, our supreme court has held that such a motion is precluded. *State v. Superior Court*, 126 Ariz. 175, 619 P.2d 3 (1980).

■ Appellant's second issue is that the prosecutor improperly attempted to impeach witnesses by asking them about specific acts of misconduct unsupported by a conviction. These involve the nude dancing females, the minimum wage law, and the fact that the trial judge granted Joseph Tovar a new trial. These issues were covered in *State v. Joseph Tovar, supra*, and in the above discussion. Suffice it to say that for the most part no proper objections were made to the evidence, and, in any event, the evidence was admissible to prove appellant's knowledge or scienter. *State v. Locks*, 91 Ariz. 394, 372 P.2d 724 (1962). We see no prejudicial error in these matters.

■ The third issue is whether appellant was denied due process by the grand jury indictment. He argues that since one grand jury refused to indict him, that the prosecutor could not obtain a later indictment against him on the basis of the same evidence. No authority is cited to support this argument and we have found none on point. As noted by the State, an indictment can only be attacked on the basis of Rule 12.9(a), Rules of Criminal Procedure, 17 A.R.S.[3] Appellant has not asserted any of the grounds set forth in Rule 12.9(a) for attacking the sufficiency of the indictment. The purpose of the grand jury is to investigate an alleged crime and determine whether there is probable cause to believe the person under investigation committed it. A.R.S. § 21–413. There is no constitutional or legal prohibition limiting resubmission of evidence to another jury. The record here shows that there was not only probable cause that appellant committed the crimes charged, but the proof against him was overwhelming. We see no due process problem.

3. Rule 12.9 Challenge to grand jury proceedings

　a. Grounds. The grand jury proceedings may be challenged only by motion for a new finding of probable cause alleging that the

■ Appellant's final contention is that A.R.S. § 13–531.01(4), defining "knowledge", violates the first and fourteenth amendments to the United States Constitution. In *State v. Yabe*, 114 Ariz. 89, 559 P.2d 209 (App. 1977), we held that the definition was constitutional. The United States District Court, Arizona, reached the same conclusion in the well-reasoned opinion filed in *Dugal v. Hyder*, 467 F.Supp. 1119 (D.C. 1979), involving A.R.S. § 13–3501(4) which succeeded § 13–531.01(4) on October 1, 1978. *Dugal* involved most of the same arguments raised in this case. Judge Craig said:

　While it is true that courts have allowed the states greater control in the regulation of materials which are made available for sale to minors, *Ginsberg v. State of New York*, [390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195] supra, there is no decision which distinguishes between the *degree of scienter* required in statutes regulating sales to adults versus those regulating sales to minors.

　　*　　*　　*　　*　　*　　*

　In *Ginsberg v. New York*, supra, the Supreme Court was faced with a challenge to the scienter requirement of a statute regulating the sale of obscene materials to minors. The scienter requirement of that statute was virtually identical to the scienter requirement of the general obscenity statute in Arizona.

　A careful reading of *Ginsberg* reveals that the Court did not intend to limit the validity of this type of scienter requirement to statutes dealing exclusively with the prohibition of the distribution of obscene materials to minors.

　In discussing the issue of scienter, the Supreme Court did not distinguish between a general obscenity statute and a statute designed for the protection of minors. The Court specifically referred to

defendant was denied a substantial procedural right, or that an insufficient number of qualified grand jurors concurred in the finding of the indictment.

556

*People v. Finkelstein,* 9 N.Y.2d 342, 214 N.Y.S.2d 363, 174 N.E.2d 470 in which the New York Court of Appeals read the requirement of scienter into New York's *general* obscenity statute. The Court noted that the scienter requirement, virtually indistinguishable from the one in question was passed by the legislature after the *Finkelstein* decision. The Court stated that "(w)hen the (New York statute in question) was before the New York legislature, its attention was directed to *People v. Finkelstein,* as defining the nature of scienter required to sustain the statute. 1965 N.Y.S. Leg.Ann. 54–56." *Ginsberg v. New York,* 88 S.Ct. at 1283. The Court, therefore, implicitly acknowledged the validity of this type of scienter requirement in the context of a general obscenity statute.

467 F.Supp. at 1121. We agree.

In *State v. Navarrette,* 115 Ariz. 574, 566 P.2d 1050 (App. 1977), regarding A.R.S. § 13–531.01(4), we said:

Appellant also contends that there was insufficient evidence to show scienter or knowledge on his part that the films were obscene.

The word "knowingly" as used in A.R.S. § 13–532A is defined in subparagraph 4 of § 13–531.01 as follows:

"'Knowingly' means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of: (a) The character and content of any material described in this article, which is reasonably susceptible of examination by the defendant. * * *"

This definition appears to be in basic accord with principles adopted by the United States Supreme Court in *Rosen v. United States,* 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896) and adhered to in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

115 Ariz. at 578, 566 P.2d at 1054.

The above cited cases all reject appellant's argument that A.R.S. § 13–531.01(4) is unconstitutional, and we reject it again. There is no constitutional impediment to the statutory definition of "knowledge" involved herein.

The judgment and sentence are affirmed.

KENNETH C. CHATWIN, J., Retired, concurs.

NOTE: The Honorable Kenneth C. Chatwin, a retired judge of a court of record, was authorized to participate by the Vice Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 20.

OGG, Chief Judge, dissenting:

The appellant, Oscar Tovar, was tried in a consolidated trial with his brother, Joseph Tovar. Joseph Tovar was the owner of the Empress Theatre and Oscar Tovar was hired as a clerk and projectionist who also ran the Empress Theatre when his brother Joseph was absent. They were both convicted by a jury for the sale of obscene items at the Empress Theatre in violation of former A.R.S. § 13–532.

The trial judge granted Joseph Tovar a new trial but refused Oscar Tovar's motion for a new trial. In a recent memorandum decision, this court upheld the granting of the new trial to Joseph Tovar because of improper questions and insinuations indicating that Joseph Tovar hired a minor to work in the projection booth. As an example of this line of improper questioning, the prosecutor asked Joseph Tovar the following question on cross-examination:

Q. Isn't it a fact that on several occasions there have been high school students under age in the projection booth while pornographic films have been displayed?

The prosecutor never offered any proof of such allegations. In his closing statement, the prosecutor acknowledged he could not prove there had been children in the projection booth, but further stated: "It is next to impossible to enforce these kinds of prohibitions against minors if you have this kind of store—somehow minors are going to get in there."

This was a case involving the sale of obscene materials by Oscar Tovar to undercover police officers; minor children were

not involved in the charges. The nature of the insinuations was that minors were allowed inside the Empress Theatre and that such minors had access to the materials exhibited and sold at the theater.

In my opinion, these insinuations were improper and prejudicial to both Joseph and Oscar Tovar. *See State v. Hill*, 109 Ariz. 93, 505 P.2d 553 (1973); *State v. Stago*, 82 Ariz. 285, 312 P.2d 160 (1957). If Joseph Tovar, the owner, was prejudiced and entitled to a new trial, it appears that Oscar Tovar, the projectionist and part-time manager, would also be prejudiced and entitled to a new trial.

I would reverse and remand for a new trial.