633 P.2d 1384

**STATE of Arizona, Appellee,**

v.

**Donald Ray HINES, Appellant.**

No. 5099.

Supreme Court of Arizona,
In Banc.

Sept. 9, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Friedlander & Friedlander by Susan O. Friedlander, Scottsdale, for appellant.

STRUCKMEYER, Chief Justice.

Appellant Donald Ray Hines was convicted by jury of illegal possession of marijuana and appeals. Affirmed.

On the evening of April 6, 1979, Willie Jewel Haynie was allegedly sexually assaulted. The following morning, Haynie accompanied the police to appellant's home where she identified the appellant as one of the persons who had assaulted her. The police then placed the appellant under arrest. Following a search after his arrest, the police found a matchbox containing marijuana in the pocket of his pants. Subsequently, the appellant was tried on charges of kidnapping, sexual assault and possession of marijuana. The jury found appellant guilty of possession of marijuana, but was unable to reach a verdict as to the other asserted offenses.

On appeal, appellant urges that the cross-examination of Susan Robinson, the appellant's chief alibi witness, by the prosecution was improper. Appellant called Susan Robinson, the woman with whom he had been living, to the stand. According to Robinson's testimony, she spent the evening of the alleged assault with the appellant's family. At about 11:15 p.m. that night, the appellant telephoned her at his parents' home, at which time she told him she was ready to leave. He arrived to take her home at about 11:30 p.m., but they did not leave then. First, appellant went to pick up Robinson's brother, Daryl. The appellant returned for Robinson at about 12:00 or 12:30 a.m. As she was leaving the Hines' home, she saw her brothers Daryl and Jimmy sitting in Daryl's car parked alongside of the Hines' house. She also saw a young woman in the car, but failed to recognize her. Robinson and appellant went to where they were living and retired for the evening.

On cross-examination, the prosecutor tried to establish that much of Robinson's testimony was fabricated. He repeatedly called her attention to a prior interview he had had with her on September 13, 1979, and the fact that she had not related to him anything about the telephone call at 11:15 p.m., the appellant's initial visit to his parents' home, or the fact that she had seen her brothers in the company of a woman outside the Hines' residence. He also cross-examined her about what she had told him at the prior interview concerning the vehicle appellant was driving the night of April 6th and about statements she made to an investigating detective the day of appellant's arrest.

Appellant urges that the attempted impeachment was improper. The first impeaching questions of which appellant complains consisted of the prosecutor asking Robinson if she remembered the prior interview of September 13, 1979, and the fact that during that interview she had not said anything to him about the telephone call, the appellant's first visit to his parents' home, or the fact that she had seen her brothers in the company of a woman outside the home of appellant's parents. The

question is whether Robinson's September 13, 1979 statements were, in fact, consistent with her testimony at appellant's trial.

■ At the outset, it should be said that what is being dealt with here is not a direct contradiction between testimony at trial and a previous statement, but, rather, that during a prior interview the witness omitted certain facts to which she later testified at trial. Whether an omission to state a fact constitutes an inconsistency sufficient to discredit a witness depends at least in part upon the circumstances under which the prior statement was made. A prior omission will constitute an inconsistency only where it was made under circumstances rendering it incumbent upon the witness to, or be likely to, state such a fact. See *Ball v. State*, 43 Ariz. 556, 559, 33 P.2d 601, 602 (1934); *Carroll v. Krause*, 295 Ill. App. 552, 562, 15 N.E.2d 323, 328 (1938); *Asato v. Furtado*, 52 Haw. 284, 288, 474 P.2d 288, 292 (1970); *Sims v. State*, 530 P.2d 1176, 1179–1180 (Wyo. 1975). The rationale for allowing impeachment in these circumstances is that "a *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to assertion of the non-existence of the fact."[1] IIIA Wigmore, Evidence § 1042 (Chadbourn rev. 1970). The underlying test as stated in *Wigmore*, supra is: would it have been natural for the person to make the assertion in question?

■ Here, during the course of the September 13, 1979 interview, the prosecutor questioned Robinson at some length concerning the events of April 6, 1979. She knew that the prosecutor was interested in her because of her relationship with appellant. It could be inferred that she should have realized she was to tell him everything she knew about the appellant's activities that day. The 11:15 p.m. telephone call, the initial appearance of the appellant at his parents' home and the observation of her brothers outside the appellant's parents' home are all facts which it would have been natural to relate when questioned about appellant's activities on April 6, 1979. Her failure to do so constituted proper grounds for impeachment.

■ Next, appellant contends that even if the omissions were prior inconsistent statements, impeachment should not have been permitted because the prosecutor failed to lay the proper foundation. It is true that in the past a cross-examiner in attempting to impeach a witness by use of prior inconsistent statements was required to ask the witness whether he made the alleged statement, giving its substance and naming the time, the place, and the person to whom made. See McCormick, Evidence, § 37 (1972 ed.). However, these foundational requirements have been explicitly abolished by Rule 613(a), Rules of Evidence, 17A A.R.S., which states: "In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time * * *." The only requirement is that upon request, the statement must be shown or disclosed to opposing counsel. See 3 Weinstein and Berger, Weinstein's Evidence 631–1 et seq. (1978), and Am.Jur.2d, Federal Rules of Evidence

---

1. It is true that under Rule 19.3, Rules of Criminal Procedure, 17 A.R.S., no prior statement of a witness may be admitted for purposes of impeachment unless it varies materially from his testimony at trial. The comments to Rule 19.3 make it clear that the actual standard embodied in the rule is theoretically no different from the one used prior to adoption of the rule. The standard as stated in IIIA Wigmore, Evidence § 1040 (Chadbourn ed. 1970), is:

"[T]he purpose [of impeachment by use of a prior inconsistent statement] is to induce the tribunal to discard the one statement because the witness has also made another statement which cannot at the same time be true. * *

Thus, it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required."

It would seem apparent, based on the rationale for considering a prior omission a prior inconsistent statement, that an omission which qualifies as a prior inconsistent statement will vary materially from the latter trial testimony as required by Rule 19.3, since on the first occasion the person is in effect saying that the fact does not exist, while on the second occasion he is saying that it does exist. Both statements cannot possibly be true, hence an inconsistency.

77 (1975), discussing the provisions of the similar federal rule. Here, the transcript of the relevant interview was made available to defense counsel at her request. Thus, Rule 613(a), Rules of Evidence, 17A A.R.S. was fully complied with.

■ Appellant contends that even if the prior omissions were inconsistent, and no foundation was necessary, the impeachment was improper because the prosecutor failed to follow up his questions by introducing extrinsic evidence of the omissions. Such impeachment, appellant contends, constitutes impeachment by insinuation and is improper. It has long been the rule that a cross-examiner may not impeach a witness by implying the existence or non-existence of statements or facts which he is not prepared to prove. *State v. Hill*, 109 Ariz. 93, 95, 505 P.2d 553 (1973). Here, Robinson's testimony was not impeached by insinuation. Impeachment by insinuation occurs when the cross-examiner asks questions for which there is no basis in fact. Robinson admitted that she had previously been asked about the events of April 6, 1979 and at that time had failed to say anything about the telephone call, the fact that appellant had first appeared at his parents' home at about 11:30 p.m. or that she saw her brothers outside the Hines' home. No further proof was necessary. See Udall, Arizona Law of Evidence § 63 (1960); *United States v. Hibler*, 463 F.2d 455 (9th Cir. 1972).[2] As such, any impeachment which the jury might infer was not by insinuation.

A further attempt at impeachment to which appellant objects relates to these questions and answers:

"Q. Going back to the interview in Mrs. Friedlander's Office, do you remember that I was asking you questions about the type of car that Donald Hines was driving that evening?

A. Do I remember you asking me that particular question?

Q. That line of questions.

A. No.

Q. So you don't remember telling me that he was driving Dwight's car that evening?

[Defense Counsel]: Your honor, I object because the witness is not being apprised of what questions she was faced with at the time that the first statement was supposed to have been made."

From an examination of the record, we are unable to find anything improper in this line of questioning. Robinson testified on direct examination that appellant was driving Dwight's car when he arrived the first time at 11:30 p.m. She also testified that when they left later at 12:30 a.m. they left in the appellant's yellow and black LTD. On September 13, 1979, she told the prosecutor that the appellant came by his parents' home at 12:30 and that he was driving his brother Dwight's car. She made no mention of the yellow and black LTD. Impeachment requires that the prior statement vary materially from that made at trial. See Rule 19.3, Criminal Rules of Procedure, 17 A.R.S. The comments to Rule 19.3, as stated in footnote 1, supra, indicate that the standard embodied in the rule is theoretically no different from the one used prior to adoption of the rule. In IIIA Wigmore, Evidence § 1040 (Chadbourn rev. 1970), the standard for determining inconsistency is stated as "it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is inconsistency which is required * * * As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done." Here, while at first glance the two statements may seem reconcilable, they are in fact inconsistent. By the statement of September 13, 1979, the only time Robinson saw the appellant on April 6, 1979 was when he came to his

---

**2.** In fact, the real controversy in this area is whether the cross-examiner *may* introduce extrinsic evidence after the witness admits to having made the prior inconsistent statement.

See Weinstein and Berger, Weinstein's Evidence 613 (1978). *Compare* McCormick, Evidence § 37 (1972 ed.) with IIIA Wigmore, Evidence § 1043 (Chadbourn rev. 1970).

parents' home at 12:30. During the course of the September 13 interview, the prosecutor asked her whose car the appellant was driving that evening. Robinson stated that the appellant was driving his brother Dwight's car. Thus, on closer scrutiny, her statement on September 13, 1979 is in direct contradiction to her testimony at trial and therefore is admissible for impeachment purposes under Rule 19.3(b), Rules of Criminal Procedure 17 A.R.S.

Appellant argues the impeachment was improper because the proper foundation was not laid. As stated, the foundational requirements for impeachment through the use of a prior inconsistent statement have been abolished by the adoption of Rule 613(a), Rules of Evidence, 17A A.R.S. Therefore, appellant's objection both at the time of trial and reiterated on appeal is without merit.

▪ Appellant contends that when Robinson testified that she did not remember having made the prior statement, the prosecutor was required to prove the making of the statement through the use of extrinsic evidence. However, we are unaware of such a requirement. To the contrary, the controversy in this area is not whether the cross-examiner has to introduce extrinsic evidence but whether he *may* introduce such evidence. See 3 Weinstein and Berger, Weinstein's Evidence, 613–18 to 613–23 (1978).

Nor do we find this is impeachment by insinuation. In order that there be impeachment by insinuation, the prosecutor must have asked the question without proof of the prior inconsistent statement. Here, the transcript of the September 13, 1979 interview clearly confirms the prosecutor's contention that Robinson previously told him that the appellant was driving his brother Dwight's car when he came to pick her up at the Hines residence. Any impeachment which occurred was direct and not by insinuation.

▪ Appellant urges that the following question was an improper attempt at impeachment:

"Q. Do you remember telling the officer that Donald Hines had a rifle in the house which he had borrowed from his uncle?"

We agree that this was an improper attempt at impeachment. There is nothing in the record which shows that Robinson testified to anything at the trial which was inconsistent with her earlier statement to the detective. But we fail to see the harm which appellant suffered as a result of the improper question. The error was not enhanced by the introduction of extrinsic evidence of the prior statement, and, although it is possible to interpret the mere asking of the question as impeachment by insinuation, we have previously said that the prejudice resulting from impeachment by insinuation is not as clear if the witness is not the defendant and the questions do not refer to previous bad acts. See *State v. Hill*, 109 Ariz. 93, 96, 505 P.2d 553 (1973).

We find that the impeachment of the witness, Robinson, was for the most part proper. That which was not was non-prejudicial.

Finally, the effect of the impeachment was not nearly as devastating as appellant would have us believe. While we recognize that the impeachment may have affected Robinson's overall credibility, we note that all of the impeachment was directed to her testimony of the events of April 6, 1979. It attacked the alibi which Robinson provided on the sexual assault and kidnapping charges and not as to the charge of possession of marijuana. Moreover, Robinson's testimony that she had worn the appellant's jeans the day before and that the marijuana in the jeans pocket was hers was impeached by means other than the inconsistent statements. Robinson testified that she was a foot shorter than appellant and that she usually rolled up the legs on his pants before wearing them; yet when she took the jeans from the top of the dresser where she had discarded them the day before, the legs were not rolled up. She also testified that she was seven months pregnant at the time of appellant's arrest. The arresting officer testified that she saw Rob-

inson on the day appellant was arrested and that she was noticeably pregnant. From these facts, the jury could have concluded that Robinson could not possibly have worn the appellant's jeans. In addition, appellant accepted full responsibility for the marijuana found in the jeans pocket on direct testimony, although he later contradicted this testimony on cross-examination.

In January of 1979, appellant was arrested for illegal possession of marijuana for sale. He was subsequently convicted of that offense. On cross-examination, the prosecutor questioned the appellant concerning the circumstances surrounding the prior arrest and conviction. The fact was established that at the time of the prior arrest, the arresting officers found a toolbox containing about 55 matchboxes of marijuana in appellant's bedroom. On cross-examination, the appellant admitted that at the time of his prior arrest he carried matchboxes containing marijuana.

■■■ On appeal, appellant contends that it was error for the lower court to allow the prosecutor to question appellant about the facts surrounding his prior arrest. We disagree. As a general rule, evidence of other crimes is not admissible to show that the defendant is a bad person or has a propensity for committing crimes. *State v. Rose*, 121 Ariz. 131, 135, 589 P.2d 5 (1978). However, evidence of other crimes is admissible under Rule 404(b), Rules of Evidence, 17A A.R.S., to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. In order to support a conviction for unlawful possession, the state must establish that the accused *knowingly* possessed the marijuana, 11A A.R.S. § 36–1002.05 (now § 36–1002).

In addition, although intent is generally not an element of the offense of possession requiring independent proof, such proof may become necessary where the defendant through his own testimony or by the substance of his defense puts his intent in issue. *State v. Hays*, 17 Ariz.App. 202, 207, 496 P.2d 628 (1972).

■■ Here, despite the fact that the marijuana was found in the appellant's pocket, he denied having put it there. He also called Robinson to the stand, who testified that she wore the appellant's jeans the day before his arrest and it was her marijuana that was subsequently found in the jeans pocket. Thus, in presenting his defense, appellant put both his intent and his state of knowledge at issue. The evidence of the prior act showed that only four months before appellant was arrested on these charges, he carried marijuana in matchboxes. The proximity in time and the similarity of the prior offense establish its admissibility under Rule 404(b), Rules of Evidence, 17A A.R.S., to show knowledge and intent. See *State v. Womack*, 6 Ariz.App. 267, 431 P.2d 908 (1967); *State v. Mosely*, 119 Ariz. 393, 581 P.2d 238 (1978). See generally, II Wigmore on Evidence § 302 (Chadbourn ed. 1979).

Affirmed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.