NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ALEXIS ORTIZ ECHEVARRIA, et al., *Plaintiffs/Appellants*,

*v.*

GOOD HEALTH MEDICAL, PC, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0245

FILED 05-18-2026

Appeal from the Superior Court in Maricopa County
No. CV2020-054798
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED**

COUNSEL

Law Office of Luis P. Guerra, LLC, Phoenix
By Luis P. Guerra
*Co-Counsel for Plaintiffs/Appellants*

Shapiro Law Team, Scottsdale
By David C. Shapiro
*Co-Counsel for Plaintiffs/Appellants*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

Wicker Smith O'Hara McCoy & Ford, PA, Tempe
By Bruce D. Crawford
*Co-Counsel for Defendants/Appellees*

Jones Skelton & Hochuli, PLC, Phoenix
By Rita J. Bustos
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined. Presiding Judge Michael S. Catlett also filed a concurring decision.

---

**P A T O N**, Judge:

**¶1** Alexis Ortiz Echevarria ("Ortiz") appeals a jury verdict in favor of Norah Parker and Good Health Medical, P.C., dba "My Dr. Now" (collectively, "Defendants"), and the superior court's order denying his motion for new trial. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2** We view the facts in the light most favorable to upholding the jury's verdict. *Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 296, ¶ 26 (App. 2007).

**¶3** In 2013, Ortiz's wife, Jessie Acosta Valentin ("Acosta"), had her spleen, gallbladder, and part of her pancreas removed during surgery for a pancreatic cyst. Her surgeon warned her that she was now immunocompromised because she had no spleen, so she needed to inform all future medical providers that she had no gallbladder and spleen and stay current on pneumonia vaccinations.

**¶4** In 2014, Acosta visited My Dr. Now, a primary care and urgent care clinic. On her new patient intake form, she listed three past surgeries: thyroid removal, pancreatic cyst removal, and C-section. She did not share that her gallbladder and spleen had also been removed.

¶5 Acosta visited My Dr. Now a few more times over the next several years for acute concerns. None of the records from those visits indicated Acosta did not have a spleen.

¶6 On January 21, 2019, Ortiz brought Acosta to My Dr. Now because she was suffering from body aches, chills, fever, dry cough, sore throat, nasal congestion, nausea, and vomiting. She was treated by Parker, a physician assistant ("PA"), who had never treated Acosta before.

¶7 Parker assessed Acosta's vitals, asked about her symptoms, conducted a physical examination, and analyzed several lab results, including a strep throat rapid test, urinalysis, and blood glucose test. Based on her examination, Parker found Acosta's diabetes was well-controlled and all symptoms were consistent with the flu. She prescribed Tamiflu and an anti-nausea medication and instructed Acosta to go to the emergency department if her symptoms worsened.

¶8 The next day, Acosta went to the emergency department, appearing "very sick." She died from sepsis several hours later, which had developed from bacterial pneumonia.

¶9 Ortiz sued Defendants on behalf of Acosta's statutory beneficiaries, alleging Parker negligently misdiagnosed Acosta with the flu (instead of pneumonia) and failed to recognize her susceptibility to bacterial infection because she had no spleen.

¶10 Prior to trial, the superior court issued a minute entry notifying the parties that "all trial exhibits must be listed in the Joint Pretrial Statement along with objections," and the objections "must be listed in the Joint Pretrial Statement to be preserved." Defendants listed Acosta's medical records from medical providers other than My Dr. Now providers, and Ortiz objected based on hearsay, foundation, authenticity, and relevance.

¶11 At trial, the court asked Defendants about the relevance of those records. Defendants claimed they demonstrated Acosta never reported her full medical history to any provider. Ortiz responded that this was improper character evidence under Arizona Rule of Evidence ("Evidence Rule") 404. The court overruled Ortiz's objection, stating it "d[id]n't find that it's character evidence inadmissible under [Evidence Rule] 403 or 404."

¶12 Ortiz testified he told Parker that Acosta's spleen had been removed; Parker testified he did not. Parker testified that when she sees

patients who have been treated by other providers at the My Dr. Now clinic, she reviews the clinic's records for that patient and asks the patient if there have been any changes to his or her medical history. She testified that if anyone told her Acosta had no spleen, she would have documented it because it would have been a "very significant finding."

**¶13** Each party also called an expert to testify about a PA's standard of care. Ortiz's expert, PA Jennifer Huddleston, testified Parker did not meet the standard of care by failing to review Acosta's medical history with Acosta, order necessary lab work and a chest x-ray, send her to the hospital even though she met criteria indicating potential sepsis ("SIRS criteria"), and call a supervising physician. Huddleston also testified the standard of care would not have differed even if Acosta had a spleen; because Acosta met the SIRS criteria, she required further evaluation and a hospital referral.

**¶14** Defendants' expert, PA Norman Bizon, testified that Parker conducted the appropriate physical examination and lab tests to correctly rule out any bacterial infection. He testified that Acosta had the flu on January 21, 2019, and Parker fully met the standard of care.

**¶15** Defendants then called My Dr. Now's owner and CEO, Dr. Payam Zamani. Ortiz had moved in limine to preclude Dr. Zamani as an expert witness, arguing he could not testify as to the standard of care for a PA because he was not a PA, and because Defendants already had another standard of care expert. The court agreed "he [could not] offer standard of care testimony," but Defendants stipulated that Dr. Zamani would not testify about standard of care, so the court denied the motion in limine based on the stipulation. At trial, Dr. Zamani testified about My Dr. Now's procedures. He further testified that he would not have treated Acosta any differently than Parker did, so Acosta's diagnosis and treatment would not have changed if Parker had called a supervising physician.

**¶16** The jury returned a defense verdict. Ortiz moved for a new trial, arguing that the other medical records were used as improper character evidence, Dr. Zamani offered improper standard of care testimony, and the jury's verdict was against the weight of the evidence.

**¶17** In response, Defendants argued Dr. Zamani did not testify about the standard of care, and the evidence supported the jury's verdict. They also argued Ortiz waived his character evidence objection by failing to list it in the joint pretrial statement, but even if the objection was not

waived, the other medical records were admissible to show that Acosta consistently failed to disclose her splenectomy.

¶18        The superior court denied Ortiz's motion, finding the testimony from the defense's witnesses provided sufficient evidence to support the verdict. It further found Dr. Zamani testified as My Dr. Now's corporate representative about the clinic's policies, not about a PA's standard of care. Finally, it found Ortiz waived his improper character evidence objection by not raising it in the joint pretrial statement, and his argument nonetheless failed because the evidence was admissible to rebut his testimony that Acosta was diligent in informing medical providers her spleen had been removed.

¶19        Ortiz timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1), (5)(a).

## DISCUSSION

### I.    The court did not abuse its discretion in finding that Ortiz waived his objection to the other medical records on character evidence grounds.

¶20        Ortiz argues the superior court erred in admitting Acosta's other medical records, which were used as improper character evidence. But the superior court found Ortiz waived his character evidence objection by failing to list it in the joint pretrial statement. This is a sanction under Arizona Rule of Civil Procedure ("Civil Rule") 16(h), which we review for an abuse of discretion. *Smith v. Olsen*, 257 Ariz. 518, 526, ¶ 23 (App. 2024).

¶21        Generally, a "pretrial statement controls the subsequent course of the litigation otherwise modified at trial to prevent manifest injustice." *Carlton v. Emhardt*, 138 Ariz. 353, 355 (App. 1983). The purpose of the joint pretrial statement is to "narrow the scope of the legal and factual issues to those which are truly legitimate, prevent[] surprises and facilitate[] the trial of the case." *Aetna Cas. & Sur. Co. v. Dini*, 169 Ariz. 555, 557 (App. 1991).

¶22        Civil Rule 16(f)(2)(E) requires parties to include their list of exhibits and "any objection to an exhibit and the basis for that objection" in the joint pretrial statement. Objections not listed in the pretrial statement may be deemed waived. *Smith*, 257 Ariz. at 527, ¶ 28. Consistent with Civil Rule 16(f)(2)(E), the superior court issued a minute entry on January 25, 2023, notifying the parties that "all trial exhibits must be listed in the Joint

5

Pretrial Statement along with objections," and the objections "must be listed in the Joint Pretrial Statement to be preserved."

**¶23** In the joint pretrial statement, Ortiz objected to the other medical records based only on hearsay, relevance, foundation, and authenticity. But "an objection on one ground does not preserve the issue on another ground." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 440, ¶ 13 (App. 2012) (citation omitted). By failing to list improper character evidence as a basis for his objection, Ortiz failed to comply with the court's pretrial order requiring the parties to list their objections. And he has provided no explanation to show good cause for his failure to do so.

**¶24** The superior court has "broad discretion" to issue sanctions under Civil Rule 16, unless it imposes a severe sanction like dismissal, entering default judgment, or striking a pleading. *Smith*, 257 Ariz. at 527, ¶ 27. The sanction of waiver is not one "of those harsher sanctions." *Id.* Further, the court "had warned the parties they had to provide their objections in the pretrial [statement] on pain of waiving them." *See id.* at ¶¶ 27-28. On this record, we cannot say that the superior court abused its discretion in finding waiver.

**¶25** Ortiz, however, asserts that he did not waive the objection under the January 25, 2023, minute entry, because the court issued another minute entry on March 12, 2024, allowing the parties to raise new objections at trial. We disagree.

**¶26** The March 12, 2024, minute entry stated that "objections to exhibits will be resolved during the course of trial," and "admission of exhibits, whether through stipulation or for lack of preserving an objection in the Joint Pretrial Statement, will also be addressed during the trial." This language does not, as Ortiz contends, "qualif[y]" the court's January 25, 2023, order requiring objections be listed in the joint pretrial statement. The March 12, 2024, minute entry did not say that the parties could raise new objections to the exhibits at trial; it simply informed the parties that the court would rule on the objections listed in the joint pretrial statement and admit the stipulated or unobjected-to exhibits during trial.

**¶27** Ortiz further contends that, even if his objection was waived, the court's admission of improper character evidence was fundamental error. But our supreme court has cautioned that "the fundamental error doctrine should be used sparingly, if at all, in civil cases." *Williams v. Thude*, 188 Ariz. 257, 260 (1997). It is therefore typically limited to "situations that may result in the denial of a constitutional right," *Ruben M.*, 230 Ariz. at 239,

6

¶ 15 (applying fundamental error review "because of the constitutional ramifications inherent in termination proceedings") (citation omitted); *see also In re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, 527, ¶ 20 (2023) (fundamental error review appropriate in civil commitment appeal because patient's liberty was at stake). We decline to apply fundamental error review here.

## II. The superior court did not err in permitting Dr. Zamani's testimony.

**¶28** Ortiz next argues the superior court erred in permitting Dr. Zamani to present standard of care testimony in violation of Section 12-2604(A) and Civil Rule 26(b)(4)(F)(i) (the "One-Expert Rule"). He claims Dr. Zamani made five statements related to the standard of care: (1) a physician is not required to be in the facility at all times while a PA is treating patients; (2) a PA has the discretion to decide whether to call a supervising physician; (3) a complete blood count (CBC) was not indicated; (4) a chest x-ray was not indicated; and (5) a call to a supervising physician was not indicated.

**¶29** We review "determinations on expert qualifications for an abuse of discretion." *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387, ¶ 30 (2013). Whether a party violates "the One-Expert Rule is a mixed question of law and fact." *McDaniel v. Payson Healthcare Mgmt., Inc.*, 253 Ariz. 250, 255, ¶ 14 (2022). As a mixed question, we defer to factual findings but review legal conclusions de novo. *Id.* We will not disturb the superior court's evidentiary rulings absent a clear abuse of discretion and resulting prejudice. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

**¶30** Section 12-2604(A) requires a standard-of-care expert to have the same specialization as the defendant if the care or treatment at issue was within a specialty. *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 165-66, ¶ 27 (2017). Civil Rule 26(b)(4)(F)(i) provides that "each side is presumptively entitled to call only one retained or specially employed expert to testify on an issue." But "where an issue cuts across several professional disciplines, the court should be liberal in allowing expansion of the limitation upon experts established in [Civil Rule 26(b)(4)(F)(i)]." *McDaniel*, 253 Ariz. at 257, ¶ 25 (citation omitted); *see, e.g., Pipher v. Loo*, 221 Ariz. 399, 403, ¶ 15 (App. 2009) (causation expert may testify that defendant breached standard of care "as a predicate to his opinion that [defendant]'s violation of the standard of care caused [plaintiff]'s injury").

¶31     Ortiz claims Dr. Zamani could not testify about a PA's standard of care because Dr. Zamani was not a PA and Defendants already had a standard of care expert. But we need not address whether standard of care testimony by Dr. Zamani would violate the One-Expert Rule or Section 12-2604(A) because Dr. Zamani's proposed testimony pertained to causation, not standard of care.

¶32     Testimony about standard of care addresses whether the healthcare provider exercises the "degree of care, skill and learning expected of a reasonable, prudent health care provider . . . acting in the same or similar circumstances." *See* A.R.S. § 12-563(1). Causation, on the other hand, asks whether the same result would have occurred if not for the breach of standard of care. *See Barrett v. Harris*, 207 Ariz. 374, 381, ¶ 25 (App. 2004).

¶33     Before calling Dr. Zamani as a witness, defense counsel informed the court that he intended to ask Dr. Zamani whether "it [would] have made any difference if [Acosta] had seen a physician," and Dr. Zamani would respond that it would not have. The court ruled that the proposed testimony related to causation, not standard of care, because Ortiz claimed Parker's decision not to call a supervising physician caused Acosta's death. Therefore, Dr. Zamani's testimony that he would have done nothing differently if Parker called him tended to show that the alleged breach did not cause the injury. The court did not err in approving the proposed testimony.

¶34     As for whether defense counsel's questioning or Dr. Zamani's testimony exceeded the scope of the court's ruling, Ortiz waived his objection to any specific question or statement by failing to object to it at trial. *State v. Tovar*, 128 Ariz. 551, 554 (App. 1980) (requiring "specific objections" to the admission of evidence alleged to be in violation of the court's ruling on a motion in limine).

¶35     Although a motion in limine typically preserves an objection at trial, Ortiz's objections to specific statements do not relate to the propriety of the court's ruling but whether that ruling has been violated. *State v. Gasbarri*, 2 CA-CR 2019-0146, 2020 WL 3170847, at *3, ¶ 13 (Ariz. App. June 15, 2020) (mem. decision) ("[T]he lack of a contemporaneous objection suggests the testimony was within the limits the court had imposed."). In determining whether a motion in limine has preserved an issue on appeal, "the essential question is whether or not the objectionable matter is brought to the attention of the [superior] court in a manner sufficient to advise the court that the error was not waived." *State v. Briggs*,

112 Ariz. 379, 382 (1975). Ortiz did not object to the specific statements he now complains of either during trial or in his motion for new trial. His failure to do so waived his objections to these statements.

### III. The verdict was not against the weight of the evidence.

**¶36** Ortiz argues the superior court erred in denying his motion for new trial because the jury's verdict was against the weight of the evidence. He argues his own testimony that he told Parker about Acosta's splenectomy, combined with Dr. Budnick's testimony that Ortiz told him about Acosta's splenectomy, constituted direct evidence, which outweighed Defendants' circumstantial evidence of Parker's habits when recording patients' medical histories.

**¶37** Civil Rule 59(a)(1)(H) permits the court to grant a new trial where "the verdict . . . is not supported by the evidence or is contrary to law." Of all the grounds for a new trial, the grounds that the verdict is against the weight of the evidence is "least susceptible to appellate scrutiny" because it "requires a review and a weighing of the possible effect of the evidence which is not within the domain of an appellate court." *Carlton*, 138 Ariz. at 357. Thus, we will uphold an order denying a motion for new trial on the grounds that the verdict is contrary to the weight of evidence unless "it is affirmatively shown that the order is unreasonable and a manifest abuse of discretion." *McCarthy v. Kenosha Auto Transp. Corp.*, 2 Ariz. App. 620, 624 (1966).

**¶38** In ruling on a motion for new trial on the grounds that the verdict was against the weight of the evidence, the court "assess[es] the strength of the evidence, considering the credibility of the witnesses and conflicting testimony." *State v. Fischer*, 242 Ariz. 44, 51, ¶ 24 (2017). In essence, the superior court sits as a ninth juror "to guard against arbitrary verdicts." *Id.* at 49-50, ¶¶ 14, 21. But "the court should make its assessment with a keen recognition of the importance of the jury's role," and "[i]t is primarily the province of the jury to determine the credibility of witnesses and to find the facts." *Id.* at 50-51, ¶¶ 19, 24.

**¶39** The superior court did not abuse its discretion in denying the motion for new trial. The court found credible evidence supported the jury's finding that Parker's treatment did not fall below the standard of care. The record supports the superior court's finding. The jury heard testimony from expert and fact witnesses for each side. Finding the defense witnesses more credible was squarely within the jury's role. *In re Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000).

**¶40**        Ortiz's argument that his "direct evidence" outweighs Defendants' circumstantial evidence also holds no weight. It is well established that "[c]ircumstantial evidence has the same probative value as direct evidence." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 54, ¶ 21 (App. 2009). The superior court did not abuse its discretion in ruling that the verdict was not against the clear weight of evidence.

## CONCLUSION

**¶41**        We affirm.

**C A T L E T T**, Judge, concurring:

**¶42**        I join the court's decision in full. I write separately to explain that even if Ortiz hadn't waived his character evidence objection to Acosta's other medical records by not raising it in the joint pretrial statement, he opened the door to admission of those records by offering his own character evidence on the same issue.

**¶43**        One primary issue at trial was whether Ortiz or Acosta disclosed to Parker that Acosta had no spleen. Ortiz claimed he told Parker as much; Parker denied such disclosure.

**¶44**        During trial, Ortiz questioned a physician who treated Acosta the day she passed away—the day after Parker treated her. During that questioning, Ortiz elicited testimony from the physician that Ortiz disclosed that Acosta had no spleen. One can hardly blame Ortiz for eliciting this testimony. The fact that Ortiz disclosed Acosta's medical condition one day after visiting Parker was strong circumstantial evidence that he also disclosed that condition the day before. As Ortiz's counsel put it during closing arguments, "the best evidence of what [Ortiz] told [Parker] on the 21st is what he told [the physician] the next day."

**¶45**        If Acosta's other medical records are other acts evidence, then so too is the physician's testimony about what Ortiz disclosed to him the day *after* the alleged malpractice. Under Arizona Rule of Evidence 404(b)(1), "evidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith." But Ortiz elicited testimony from a physician that Ortiz acted in a particular manner the day after visiting Parker, and then he argued to the jury that his action was strong evidence that he acted in conformity just the day before.

Testimony about Ortiz's disclosure the day after visiting Parker wasn't just strong circumstantial evidence, it was other acts evidence.

**¶46**        By eliciting other acts evidence on a key issue, Ortiz opened the door to defendants responding with their own other acts evidence on that same issue—even if in Ortiz's view, the defendants' other acts evidence wasn't as strong as his. *See State v. Mincey*, 130 Ariz. 389, 404–05 (1981) (holding that the defendant opened the door to other-act evidence by placing such evidence at issue); *State v. Lindsey*, 149 Ariz. 472, 477 (1986) (explaining that when a party opens the door to improper evidence, "[a]ny error with respect to the admission of such . . . evidence will generally be considered as having been waived").  Although opening the door was worth the risk, Ortiz cannot now complain that the court allowed the defendants to respond in kind.  What's good for the goose is good for the gander.

**¶47**        For this additional reason, the court did not err in admitting Acosta's other medical records.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR